MARY B. MCDONALD, APPELLEE, V. MASONIC TEMPLE CRAFT
OF NORTH PLATTE, TRUSTEE, ET AL., APPELLANTS: COUNTY
OF LINCOLN ET AL., APPELLEES.

276 N. W. 176

FILED NOVEMBER 26, 1937. No. 29987.

*Hoagland, Carr & Hoagland,* for appellants.

*Beeler, Crosby & Baskins,* for appellee McDonald.

*R. H. Beatty* and *S. S. Diedrichs,* for appellees Lincoln county *et al.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and KROGER, District Judge.

KROGER, District Judge.

The Masonic Temple Craft, on and before January 1, 1929, was the owner of the north 88 feet of lots 3 and 4, in block 133, of the original town, now city, of North Platte, Nebraska. At that time a two-story building was on a part of said premises, the upper floor of which was used exclusively for lodge purposes; the lower floor had been used for commercial purposes, but had been vacated in the fall of 1928, except for a small portion used for a shoe shining parlor. The lower floor at no time was used for lodge purposes. Commencing about March 1, 1929, the building was torn down preparatory to the construction of a new four-story building now on said lots, which new building was completed early in December, 1929. In the new building the two upper floors are used exclusively for lodge purposes and the two lower floors are leased for commercial use. Taxes for the year 1929 were regularly levied upon this property and, not being paid, the property was advertised and, on November 3, 1930, sold for delinquent taxes to Mary B. McDonald, appellee. Subsequent taxes were paid by appellee for the years 1930, 1931, 1932, 1933, and the first half of 1934.

The evidence discloses that the first time the Masonic Temple Craft took any action regarding the assessment of the property in question was on August 30, 1930, when it filed an application before the board of equalization of Lincoln county, Nebraska, to have the property exempted from taxes for the year 1930. The county board had adjourned *sine die* as a board of equalization before any action was taken on the application, but on September 20,

1930, sitting as a county board, denied the application for exemption. From this action of the county board an appeal was taken to the district court, which appeal was later dismissed by the district court for want of jurisdiction.

In 1931 and subsequent years appellant appeared before the board of equalization of Lincoln county and objected to the assessment, and from the refusal of the board to reduce the assessment prosecuted separate appeals for each year. The question thus raised was disposed of by this court in the case of *Masonic Temple Craft v. Board of Equalization*, 129 Neb. 293, 261 N. W. 569, as modified on rehearing in *Masonic Temple Craft v. Board of Equalization*, 129 Neb. 827, 263 N. W. 150.

On June 19, 1935, Mary B. McDonald filed her petition in the district court for Lincoln county, Nebraska, for the foreclosure of her tax lien arising from the tax sale certificate and subsequent taxes paid by her. Defendants in that action made application to the district court to have Lincoln county, the members of the board of equalization, in their official capacity and as individuals, the members of the county board, in their official capacity and as individuals, the county clerk and county assessor and the county treasurer, each in his official capacity and as an individual, impleaded as parties defendant, which application was granted. Thereupon defndants filed a voluminous answer and cross-petition setting out in detail all of the various proceedings theretofore had. We do not deem it necessary to extend this opinion by setting out all of the matters attempted to be raised in the answer and cross-petition. Suffice it to say, the contention of defendants was that the assessment for the year 1929 was void, their theory being that the property at that time was entirely exempt from taxation, and that the taxes assessed for the subsequent years were void for the reason that a part of the property was exempt from taxation and the assessment was made on the property as a whole. The impleaded defendants filed a demurrer, which demurrer was sustained

by the trial court, and from this ruling the defendant Masonic Temple Craft prosecutes a separate appeal.

Trial on plaintiff's petition and the amended answer resulted in a decree of the court granting foreclosure of the tax sale certificate for the taxes for the year 1929 and subsequent taxes for the year 1930 in full, and 35 per cent. of the subsequent taxes for the years 1931 to the first half of 1934, inclusive, together with interest and attorney's fees, as by law provided. From the overruling of a motion for new trial, defendants prosecute this appeal and plaintiff filed cross-appeal.

Appellants first contend that the trial court erred in sustaining the demurrer of the impleaded defendants. It seems to be the theory of appellants that the impleaded defendants were proper, if not necessary, parties to a complete determination of the controversy respecting the taxes in question, and they argue that a court of equity having acquired jurisdiction of the matter could and should dispose of the entire controversy.

Appellants cite section 20-323, Comp. St. 1929, which provides: "When a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in." They contend it is applicable to the facts in this case. Unless the defendants sought to be impleaded were necessary parties to the case, the demurrer was properly sustained. The action was one to foreclose a tax sale certificate. The defense was that the tax sale certificate was void. If the plaintiff prevailed and the tax sale was held valid, defendants, not having paid any of the taxes, would have no claim against Lincoln county or its officials; if the defendants prevailed, plaintiff had an adequate remedy at law. See Comp. St. 1929, secs. 77-2030, 77-2054; *Farm Investment Co. v. Scotts Bluff County*, 125 Neb. 582, 251 N. W. 115. We conclude that the trial court did not err in sustaining the demurrer.

This brings us to a consideration of the main controversy. It is admitted that so much of the appellants' property as was being used exclusively for lodge purposes

was exempt from taxation, but appellee contends that during the year 1929 none of the property was owned and used for lodge purposes and that as a consequence it was taxable.

The evidence discloses that until after the 22d day of February, 1929, the second floor of the building then on the premises was used exclusively for lodge purposes, and that soon thereafter the building was torn down and a new building constructed on the site, which new building was not completed until in December, 1929. Obviously, between the 1st day of March, 1929, and the time when the new building was completed, the premises were not actually used for either lodge or business purposes.

Whether or not property is exempt from taxation on the ground that it is owned and used for educational, charitable or religious purposes depends upon the use that is made of the property. Ownership by an educational, charitable or religious organization, alone, is not sufficient ground for exemption, but the property must also be used for educational, charitable or religious purposes. See *Masonic Temple Craft v. Board of Equalization*, 129 Neb. 293, 261 N. W. 569; *Young Men's Christian Ass'n v. Lancaster County*, 106 Neb. 105, 182 N. W. 593.

In this case, during the year 1929 there was a temporary interruption in the use of the property due to the rebuilding of the premises, but such temporary cessation of use while the property was being remodeled and rebuilt did not change the character of the property for taxation purposes; and the second floor of the old building and the two upper floors of the new building during the year 1929 were exempt from taxation; the lower floor of the old building and the two lower floors of the new building, never having been used for lodge purposes, were not exempt and were subject to assessment.

It is the contention of the appellants that, if a part of the building was exempt and the assessment was on the entire building, in such a case the tax levy was void. With this contention we cannot agree.

In the case of *Janike v. Butler County,* 103 Neb. 865, 174 N. W. 847, this court used the following language: "So long as the property assessed is liable to taxation, or is liable to taxation in part, plaintiff's remedy is to go before the board of equalization, where that portion constituting the overvaluation, however it may occur, may be abated."

Appellants did not go before the board of equalization and complain about the assessment for the year 1929, and, having failed to avail themselves of the remedy provided by statute, cannot now question the validity of the taxes for that year; likewise, in the year 1930, not having properly protected their rights, cannot now question the validity of the taxes for that year.

In the year 1931 and subsequent years, appellants did go before the board of equalization and properly perfected their appeals from the action of the board of equalization and by the judgment of this court in the case of *Masonic Temple Craft v. Board of Equalization,* 129 Neb. 293, 261 N. W. 569, as modified on rehearing in *Masonic Temple Craft v. Board of Equalization,* 129 Neb. 827, 263 N. W. 150, secured a reduction of 65 per cent. of the assessed valuation. The effect of this decision is not to declare the assessment void or invalid, but that it is excessive, and directs that the assessment for the year 1931 be entered in the reduced amount thus determined.

The decree of the trial court found that plaintiff was entitled to recover the taxes for the years 1929 and 1930 in full, and for the years 1931 and subsequent thereto 35 per cent. of the tax levied. In this there was no error.

In June, 1936, the county board ordered the county assessor and county clerk to correct the assessments on the property in compliance with the decision of this court; and appellants contend this was the first opportunity they had to pay the lawful taxes on this property, and that they are not chargeable with interest during any of the time prior to June 24, 1936.

The difficulty with that contention is that the holding of this court was that the property at all times from 1931

to 1936, inclusive, was liable for taxes to the extent of 35 per cent. of the assessed valuation fixed by the county assessor, and while the appellants claim that they made a tender of the taxes for those years, the fact is that they merely appeared before the board of equalization, and at one time at least before the county treasurer, and offered to pay the tax on the lower two floors of the building if and when the lower two floors were separately assessed and the amount of the tax thus determined. At no time did they offer to pay the 1929 and 1930 taxes in full. This falls far short of a proper tender such as would relieve the taxpayer from the interest charge on the taxes actually due and owing. There was no tender of any given amount. Neither was the tender kept good, but, as stated before, only a request made that the tax be ascertained in a stated manner and an expression of readiness to pay the tax when so determined.

It follows from what has been said that the trial court did not err in allowing interest.

This brings us to a consideration of the questions raised by the cross-appeal. Cross-appellant contends first that she was entitled to 12 per cent. interest on each payment of taxes made by her, and that the trial court erred in allowing her only 9 per cent. interest on the taxes paid for the years 1932, 1933, and the first half of 1934.

On November 3, 1930, the date of the tax sale certificate, the statutes of this state provided that the owner or any person having a lien or interest in land sold for taxes might redeem the same by paying to the county treasurer the sum mentioned in the tax sale certificate with interest at the rate of 12 per cent. per annum from the date of purchase to the date of redemption, together with all other taxes subsequently paid with interest thereon at the same rate from date of payment to date of redemption. Comp. St. 1929, sec. 77-2020.

This section was amended by the legislature in 1933 by changing the rate of interest from 12 to 9 per cent. and the fee for receipt of treasurer from 25 to 15 cents, and

in all other respects it remains the same. Laws 1933, ch. 136, sec. 8.

Section 77-2041, Comp. St. 1929, provides that, in the event of foreclosure by a private holder of a tax sale certificate, such person shall be entitled to a decree for the amount appearing to be due thereon with interest at the rate per cent. per annum required to be paid for redemption from such tax sale, and that the decree shall draw interest at the same rate.

The tax sale certificate issued to cross-appellant bore interest at the rate of 12 per cent. per annum and at the time of the decree there was due thereon not only the amount paid at the time the tax sale certificate was acquired, with interest, but in addition thereto all sums paid for subsequent taxes.

It seems clear from a careful reading of these two sections of the statute that cross-appellant was entitled to interest at the rate of 12 per cent. per annum to date of decree, and that the decree should draw interest at the rate of 12 per cent. per annum until satisfied.

Cross-appellant's next contention is that she was entitled to a lien upon the whole of the Masonic Temple Craft building and lots on which it is situated for the amount found due her on her tax lien. The trial court decreed a lien on the real estate and the lower two stories of the building thereon subject to the right of support for the two upper stories and an easement of entrance to and from said upper stories. This precise question was before this court in *Young Men's Christian Association v. Lancaster County*, 106 Neb. 105, 182 N. W. 593, and the conclusion there reached was that the taxing authorities should arrive at a just valuation of that portion of the building which is taxable, in its relation to the entire property, and assess the property in that amount. Clearly this indicates that the amount of the assessment is to be arrived at by valuing that portion of the building which is taxable in its relation to the entire property, and that the entire property is then to be assessed in the amount determined.

In this case, it has been determined that the portion of the premises which is taxable represented 35 per cent. of the value of the entire property. The assessment so determined should be against the entire property, and the tax levied would be a lien on the entire property.

The final contention by cross-appellant is that she was entitled to the full amount paid by her for subsequent taxes, and that the trial court erred in allowing her only 35 per cent. of the amount paid for subsequent taxes for the year 1931 to the first half of 1934, inclusive. A purchaser of real estate at a sale made for delinquent taxes is subrogated to the rights of the public and invested with all liens and rights which the public had against the real estate by reason of taxes assessed and delinquent thereon. *Adams v. Osgood*, 42 Neb. 450, 60 N. W. 869. In the instant case the rights of the public, as finally determined, for the year 1931 and subsequent years were taxes based on an assessment of 35 per cent. of the value placed on the premises by the county assessor for those years. The tax certificate holder by paying the subsequent taxes could acquire no greater interest than the public had. The trial court did not err in denying cross-appellant recovery for the entire amount of subsequent taxes paid for the years 1931 to the first half of 1934, inclusive.

In so far as the decree of the trial court denied plaintiff interest at the rate of 12 per cent. for subsequent taxes paid for the years 1932, 1933, and the first half of 1934, and in so far as it denied plaintiff a lien on the entire premises for the amount found due, the judgment is reversed and the cause remanded, with directions to enter decree in conformity herewith. In all other respects it is affirmed.

AFFIRMED IN PART AND REVERSED IN PART.