MARY B. McDONALD, APPELLEE, v. LINCOLN COUNTY, APPELLANT.

296 N. W. 892

FILED MARCH 14, 1941. No. 30917.

*S. S. Diedrichs, R. H. Beatty* and *Milton C. Murphy,* for appellant.

*Beeler, Crosby & Baskins, Robert B. Crosby* and *Horace E. Crosby, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE and MESSMORE, JJ., and HASTINGS and KROGER, District Judges.

EBERLY, J.

This action is an appeal from a judgment of the district court for Lincoln county, Nebraska, in favor of Mary B. McDonald and against the county of Lincoln for $12,271.64, with interest and costs made and entered by it on an appeal from the disallowance by the county board of that county of a claim for a refund of money paid to the county treasurer for a tax sale certificate and subsequent taxes paid by Mary B. McDonald, as owner thereof, on the Masonic Temple Craft building in North Platte.

The material facts are not in dispute. It appears that the tax sale certificate was issued to the appellee, Mary B. McDonald, on November 3, 1930, and the payments of the taxes subsequently assessed against the premises were made when and in the amounts as alleged in her petition. The original petition was filed on June 19, 1935, by Mary B. McDonald in the district court for Lincoln county in a case wherein she was plaintiff and the Masonic Temple Craft of North Platte, Nebraska, *et al.*, were defendants, the object and prayer of which were the foreclosure of the lien of the tax sale certificate and of subsequent taxes paid by the plaintiff. Service of summons issued thereon was made on all parties on June 20, 1935. After trial on the merits on September 23, 1936, a decree of foreclosure and sale was awarded the plaintiff in the sum of $7,433.65 and interest, as provided by law. An appeal was thereupon presented from this judgment of the district court to the supreme court, wherein, after due hearing, judgment was entered directing that the judgment of the district court, made and entered on September 23, 1936, be reversed and the plaintiff's action be dismissed, and mandate so directing was duly issued from the supreme court on November 7, 1938; and such mandate was received and filed in the district

court for Lincoln county on November 8, 1938.. See *Mc-Donald v. Masonic Temple Craft,* 133 Neb. 589, 276 N. W. 176; *Id.,* 135 Neb. 48, 280 N. W. 275.

Thereafter on December 10, 1938, Mary B. McDonald filed with the county board of Lincoln county, Nebraska, a claim in writing for a refund of the moneys thus paid by her to the county treasurer of Lincoln county. This claim was disallowed in full on December 19, 1938. An appeal was prosecuted by Mary B. McDonald from this disallowance to the district court for Lincoln county. Her petition on appeal, in proper form, set forth the facts of the transaction and the adjudication by the supreme court of the state of Nebraska of the invalidity of the taxes in suit, with appropriate prayer.

The answer may be summarized as an admission of the levy of the taxes in suit, the purchase by plaintiff at tax sale, and subsequent payment of taxes as alleged in the petition, but it alleges that the major part of these taxes were levied by other municipal subdivisions of the state of Nebraska (the city and school district of North Platte), and that the proceeds so collected by the county treasurer were by him distributed to such municipal subdivisions according to their respective interests and rights thereto, and are not now in the hands of the county treasurer. Further, this answer admits the entry of judgment determining the illegality of the taxes in suit, and alleges that Lincoln county was not a party in that proceeding, and, in addition, pleads that plaintiff's action was not instituted within five years from the date of issuance of tax sale certificate, and therefore is barred.

To this answer, a reply in the nature of a general denial was filed.

The result of the trial on the merits in the district court was the judgment referred to at the commencement of this opinion. From the order of the trial court overruling its motion for a new trial, the defendant county appeals.

Appellant county, hereinafter referred to as the "defendant," now contends, viz.: (1) That plaintiff's claim

for refund is barred by the applicable statute of limitations, more than five years having elapsed between the date of the issuance of the tax sale certificate and the filing of plaintiff's claim for refund on December 10, 1938; (2) if, however, recovery is permitted on this claim it should be limited to the proportionate sum of the taxes which had been levied for the county's sole benefit, excluding from the recovery against it the taxes levied for the city of North Platte and the school district thereof, which formed a part of the original tax sale; (3) that section 77-2054, Comp. St. 1929, authorizes recovery for special assessments only, and is inapplicable to general taxes.

These questions thus presented, arising from the consideration of our revenue statutes, come within the scope or purview of the general rule, viz.:

"A statute which creates a new right, privilege or immunity, and regulates the manner of its exercise, will be construed as mandatory. In other words, the right can be exercised only in the manner and within the time prescribed. Similarly, when a' statute gives a new right and prescribes a particular remedy for its recovery, such remedy must be strictly pursued; * * *." Crawford, Statutory Construction, 526, sec. 264.

In line with these principles we have clearly determined that the liability of a county to refund taxes paid by purchaser of real estate at a county treasurer's sale for delinquent taxes, where the title fails, or the property is exempt from taxation, is statutory and does not exist at common law. *Speidel v. Scotts Bluff County,* 125 Neb. 431, 250 N. W. 555; *Gibson v. Dawes County,* 129 Neb. 706, 262 N. W. 671.

Certain sections of our statute impose upon a county the duty to hold the purchaser of real estate at a tax sale harmless by refunding the amounts of payments made by him to the county treasurer when title fails or such sale is adjudicated void. These statutory provisions are as follows, viz.:

"When by mistake or wrongful act of the treasurer or

other officer land has been sold on which no tax was due at the time or whenever land is sold in consequence of error in describing such land in the tax receipt, the county is to hold the purchaser harmless by paying him the amount of principal, interest and costs to which he would have been entitled had the land been rightfully sold, and the treasurer or other officer shall be liable to the county therefor upon his official bond; or the purchaser or his assignee may recover directly of the treasurer or other officer in an action on his official bond." Comp. St. 1929, sec. 77-2030.

"Whenever, for any reason, real estate has been sold or shall hereafter be sold for the payment of any tax or special assessment levied by any county, municipality, drainage district or other political subdivision of the state, and it shall thereafter be determined by a court of competent jurisdiction that said sale was void, it shall be the duty of such county, municipality, drainage district, or other political subdivision of the state which levied the tax or special assessment to hold said purchaser harmless by paying him the amount of principal paid by him at the sale with interest thereon at the rate of 6% *per annum* from the date of sale." Comp. St. 1929, sec. 77-2054.

And these sections are in a measure modified or qualified and limited by the provisions of section 77-2049, Comp. St. 1929, the terms of which are as follows:

"If the owner of any tax sale certificate shall fail or neglect to demand a deed thereon, or to commence an action for the foreclosure of the same within five years from the date of the sale, such tax sale certificate shall cease to be valid or of any force or effect whatever, and the real estate covered thereby shall be forever released and discharged from the lien of all taxes for which the same was sold. *And it is hereby made the duty of each and every county treasurer of the state of Nebraska to enter on the tax sale records of his or her office a cancelation of all tax sales on which five years have elapsed since date of sale, with date of entry affixed, in language substantially as follows: 'Canceled by section 6569 Revised Statutes of Nebraska for*

*1913 (77-2049).' No county treasurer or bonded abstractor shall be held responsible on his bond or otherwise on account of such entry being made in accordance with this section. All land covered by tax sales that comes within the provisions of this act shall from the time of this entry be considered to stand of record* as though no tax sale had ever been made." (Italics ours.)

The record discloses that, due to the tax exempt character of the real estate involved, the taxes here in suit were void when and as assessed and levied. When the premises herein involved were sold to the plaintiff on November 3, 1930, at public sale by the county treasurer of Lincoln county, no taxes whatever "were due thereon at that time." *McDonald v. Masonic Temple Craft,* 135 Neb. 48, 280 N. W. 275.

And, for like reason, the payment of taxes purporting to have been levied and assessed on the premises here involved by plaintiff as owner of such treasurer's certificate of tax sale, made subsequently and in good faith, were of taxes improperly assessed on tax exempt property and wholly void. The facts of the record amply sustain the conclusion that the erroneous determination of the assessable character of the premises here involved, the attempted assessment thereof, the levy of the taxes here in suit thereon, and the sale of the same at public tax sale, as well as all necessary acts connected therewith, were done and performed and carried out exclusively by the taxing officers of Lincoln county, over whose official acts the city of North Platte and its school district were vested with no control whatever; that at the time of the performance of such official acts the property in suit was exempt from such taxation because of the existence therein of an exclusive use for charitable purposes (Const. art. VIII, sec. 2), which was not disclosed by the tax records to which the tax purchaser then had access.

Under these facts, the question presented for consideration is: What relief is the plaintiff entitled to under the above statutory enactments?

Section 77-2054, Comp. St. 1929, was originally enacted as section 2, ch. 228, Laws 1915, the act being entitled "An act providing for and regulating the collection, by sale of real estate, of all delinquent taxes and special assessments levied by any county, municipality, drainage district or other political subdivision of the state and providing for the reimbursement by said political subdivision of the state, of the principal paid by tax purchasers at void sales with interest thereon from the date of sale, and making this act cumulative only." Laws 1915, ch. 228.

The first section of this act included a provision that "All provisions of said revenue law now in force with reference to the collection of taxes shall apply with equal force to all taxes and special assessments levied by said county, municipality, drainage district or other political subdivision of the state." Laws 1915, ch. 228, sec. 1.

This by necessary implication included as part thereof the provisions of chapter 112, Laws 1915, approved April 15, 1915, entitled, viz.: "An act to amend section 6569, Revised Statutes of Nebraska for 1913 (now Comp. St. 1929, sec. 77-2049), relating to tax sale certificates, and to repeal said original section."

The third section of the act (now Comp. St. 1929, sec. 77-2055), provides: "This act shall be construed as cumulative only, and not to deprive any county, municipality, drainage district or other political subdivision of the state of any right or remedy they may now have for the collection of taxes, or special assessments under the existing laws of this state, nor shall it be construed to deprive any tax purchaser of any right or remedy he may now have under the laws of this state. Nor shall it be construed to mean that the legislature intended by the passage of this act that the right to sell real estate for special assessment does not exist under the present law." Laws 1915, ch. 228, sec. 3.

This statute as an entirety is to be construed in harmony with the principles that "The legislature may define certain words used in the statute, or declare in the body of the act the construction to be placed thereon, and the court is bound

by such definition or construction, and will apply it." 59 C. J. 948.

The word "cumulative" has been defined, viz.: "A word which is said to be derived from the Latin cumulo, to heap, or cumulus, a heap, meaning that which augments by addition; that which is added to something; additional; that which is superadded to another thing of the same character and not substituted for it." 17 C. J. 401.

In *State v. Laredo Ice Co.*, 96 Tex. 461, 73 S. W. 951, it is stated: "The term 'cumulative' indicates an harmonious co-existence and cooperation, rather than a consolidation of two things into one. An amendment to a statute is not 'cumulative,' because it repeals and takes the place of the part of the law that it amends, thereby becoming a part of the law amended."

The use of the word "cumulative" in the act of 1915 negatives the concept of "amendatory." Indeed, to be considered as amendatory to section 77-2030, Comp. St. 1929, would involve transgression of the constitutional rule that "No law shall be amended unless the new act contain the section or sections as amended, and the section or sections so amended shall be repealed." Const. art. III, sec. 14.

It follows that the provisions of section 77-2054, Comp. St. 1929, must be construed as in addition to, but in no manner amending, changing, or modifying the terms of section 77-2030, Comp. St. 1929. So construed, section 77-2054 embraces within its purview all "taxes" as well as "special assessments," "levied by any county," etc. And it also follows that all rights and remedies afforded the tax sale purchaser by existing legislation at the time of the enactment of this law of 1915, and the prescribed conditions and limitations therein expressed (including Comp. St. 1929, sec. 77-2030), were continued wholly unmodified, in full force and effect.

"The mere reenactment of a statute in a code or revision has been held not to change its meaning, construction or effect. And this is held to be true though the sections of an act are separated and arranged in different connections." 2

Lewis' Sutherland, Statutory Construction (2d ed.) 857, sec. 451.

The legislative development of what is now section 77-2030, Comp. St. 1929, is set forth in *Norris v. Burt County,* 56 Neb. 295, 76 N. W. 551. It was finally perfected as section 222, ch. 73, Laws 1903. In construing the act of 1879, which is substantially identical with our present act, this court announced these doctrines:

"Where a county treasurer sells lands for taxes which were not liable to taxation, and upon which no taxes were due, the tax purchaser may recover from the county the amount paid by him, with interest thereon.

"Where a county has caused land which is not taxable to be'assessed and taxes levied thereon under which the land is afterwards sold and attempted to be conveyed, and the county from year to year afterwards causes said land to be assessed and taxes levied thereon, the tax purchaser may pay such taxes to protect his supposed lien, and, upon the failure of his interest in the land, may recover the amount he has so paid, with interest thereon, from the county.

"Where a county has caused certain real estate to be assessed, and taxes to be levied thereon, a tax purchaser may presume that the property was taxable, and is not required to make a further examination of that fact as a condition of maintaining an action against the county for the purchase money, and interest, and taxes thereafter paid to protect the tax lien which was believed to exist." *Wilson v. Butler County,* 26 Neb. 676, 42 N. W. 891.

See, also, *Roberts v. Adams County,* 18 Neb. 471, 25 N. W. 726; *Roberts v. Adams County,* 20 Neb. 409, 30 N. W. 405.

It is obvious, therefore, that, waiving the question of the statute of limitations, the county, under the rule of interpretation long established, is liable under section 77-2030, Comp. St. 1929, for all taxes which entered into the sum paid by the taxpayer, without regard for whose benefit they were levied. Indeed, our revenue act expressly defines "county tax" as follows: "The term 'county tax' includes

all taxes due to the county, school districts and other sub-divisions of the county, which are levied and collected by the county." Comp. St. 1929, sec. 77-108. And in line with this conclusion it was early held by this court that a claim for refund of taxes illegally assessed under section 71 of the revenue act then in force was a claim against a county. *Richardson County v. Hull,* 24 Neb. 536, 39 N. W. 608.

As we have seen, the fact that a court of competent jurisdiction may have determined the original tax sale for the taxes here in suit to be void, as contemplated by section 77-2054, Comp. St. 1929, would in no manner affect the rights conferred by section 77-2030, Comp. St. 1929. The rights created by both section 77-2054 and section 77-2030 continue at all times in "harmonious coexistence and co-operation." Indeed, they cannot be mutually repugnant. It follows that, unless barred by section 77-2049, claims for refund of taxes paid in this case, presented to the county commissioners of Lincoln county, would be properly sustainable as valid claims for indemnity.

Section 77-2049, Comp. St. 1929, already quoted, was evidently derived from section 180 of the revenue act of 1879. Laws 1879, p. 347. It originally read: "If the owner of any such certificate shall fail or neglect either to demand a deed thereon, or to commence an action for the foreclosure of the same, as provided in the preceding sections, within five years from the date thereof, the same shall cease to be valid or of any force whatever,. *either as against the person holding or owning the title adverse thereto, and all other persons, and as against the state, county, and all other municipal subdivisions thereof.*" (Italics ours.) It is clear that the legislature of 1903, for the words just italicized, relied on the all inclusive word "whatever" which evidences a like intent. The legislature of 1915 by an amendment thereto reenacted the provisions of the 1903 act and added the words which appear italicized in the copy of section 77-2049 hereinbefore set forth. The terms of the statute are such that it constitutes a special five-year statute of limitations, not a pure statute of limitations applicable to pleadings.

"A wide distinction exists between pure statutes of limitation and special statutory limitations qualifying a given right. In the latter instance time is made an essence of the right created and the limitation is an inherent part of the statute or agreement out of which the right in question arises, so that there is no right of action whatever independent of the limitation. A lapse of the statutory period operates, therefore, to extinguish the right altogether. To such limitations the rules of law governing pure statutes of limitation, applicable to all classes of actions, have no application; they are to be determined by the law of the place under which the right of action arose or the contract was made, and are not to be treated as waived merely because they are not specially pleaded. * * * Where time is of the essence of the right created, and the limitation is an inherent part of the statute or agreement under which the right in question arises, so that there is no right of action independent of the limitation, such special limitation extinguishes the right rather than affects the remedy." 37 C. J. 686.

This special nature of the language now appearing in section 77-2049, Comp. St. 1929, was early recognized by this court. In *Alexander v. Shaffer*, 38 Neb. 812, 57 N. W. 541, it was stated: "When land has been sold for taxes and a suit to foreclose the lien therefor is not instituted within five years from the expiration of the time to redeem, the lien is extinguished and ceases to be a charge upon the land. The statute in that respect does not merely operate to defeat the remedy, but limits the duration of the lien itself."

And in *Foree v. Stubbs*, 41 Neb. 271, 59 N. W. 798, we held: "The limitation of the revenue law with respect to the period within which an action must be brought to enforce a tax lien does not relate to the remedy merely, but to the cause of action."

See, also, *Carson v. Broady*, 56 Neb. 648, 77 N. W. 80.

So also, we are committed to the view that "Purchasers of property at tax sales, whether for investment or for the

purpose of securing title thereto, must look to the remedy prescribed by statute." *Foree v. Stubbs, supra.*

By the uniform course of our decisions, we are committed to the view that, under the language of section 77-2049, Comp. St. 1929, all rights against all persons "whatever" cease, terminate, at the expiration of five years from the date of the certificate of tax sale, unless the tax purchaser shall "demand a deed thereon," or unless he shall commence an action to foreclose the same. In other words, two remedies are removed from the bar of the statute, (1) the demand for tax deed, and (2) the action to foreclose the certificate of tax sale. But these do not include any rights to a refund by county boards of taxes paid. If the tax purchaser secures a tax deed, his rights are limited to those conferred upon him by the instrument. *Carson v. Broady, supra.* If he proceeds to foreclose his tax sale certificate, his rights are measured by the results of that procedure. All other rights created by the tax sale are by section 77-2049 terminated at the end of five years from the date of such tax sale which this statute marks as termination of the county's liability to refund.

The provisions of section 77-2054 are not overlooked in this connection, nor is the language therein contained thought to be violated by the conclusion thus stated. Section 77-2054 was originally enacted under a comprehensive title as section 2 of chapter 228, Laws 1915. The original enactment contained three sections, and its proper construction necessarily invokes the rule that, "In construing a statute, effect must be given to all its provisions." *Chicago, B. & Q. R. Co. v. School District,* 110 Neb. 459, 194 N. W. 479. See, also, *State v. City of Lincoln,* 101 Neb. 57, 162 N. W. 138. While one of the pertinent provisions of section 2 of this 1915 act (now section 77-2054) is that, "Whenever, for any reason, real estate has been sold or shall hereafter be sold for the payment of any tax or special assessment * * * and it shall thereafter be determined by a court of competent jurisdiction that said sale was void," the duty "to hold said purchaser harmless by paying him

the amount of principal paid by him," etc., exists. It will be noted that no period of limitation is expressed by these words quoted, nor indeed in the section in which they are found. However, section 1 of this act of 1915 expressly directs that "All provisions of said revenue law now in force with reference to the collection of taxes shall apply with equal force to all taxes and special assessments levied by said county, municipality, drainage district or other subdivision of the state." Thus, by direct reference the provisions of section 77-2049 were incorporated into and became a controlling part of section 77-2054 and rendered the five-year statute of limitations controlling herein. It is obvious from a mere reading of this law of 1915, as an entirety, that its expressed object and purpose were to add and insure an additional right of recovery without in any manner interfering with the controlling force of the statute of limitations then existing. So too, the obvious rules of construction are that section 77-2054, in itself silent as to matters of limitation, must be construed with all tax legislation to which it is expressly made cumulative; that amendments and repeals by implication are not favored; and that section 77-2054, as a cumulative act, and the original legislation to which it applies must be so construed that both continue harmoniously cooperative and coexistent. The result of this construction is that section 77-2054, being expressly cumulative and not amendatory in character, cannot be deemed to extend the right of the taxpayer to reimbursement from the county, in the event of a denial by a court of competent jurisdiction of a tax foreclosure, beyond the term of five years from the date of the tax sale certificate under which he claims.

The course of decisions in this jurisdiction is in accord with this conclusion.

Thus in *Gibson v. Dawes County*, decided October 11, 1935, 129 Neb. 706, 262 N. W. 671, the facts disclose that a tax sale was had on November 6, 1922, for delinquent taxes levied for 1920 and 1921, and subsequent taxes were paid thereon. Action to foreclose the same was commenced prior

to November 1, 1927. On October 27, 1930, decree was rendered therein finding that certain of the subsequent taxes paid thereon were invalid. For these a claim for refund was presented to the county board, which was by it denied. The action of the county board was by this court approved.

In *Wetzel v. Dawes County*, 129 Neb. 711, 262 N. W. 674, decided October 11, 1935, land was sold for taxes assessed prior to November 1, 1926. Action to foreclose the tax lien was commenced within five years from the date of tax sale. A decree of court determining that the land was not subject to taxation was rendered on October 20, 1932. A claim for refund was filed with the county clerk October 26, 1932, and such claim was held by this court as barred by the statute of limitations.

In *Kennedy v. Dawes County*, 130 Neb. 227, 264 N. W. 452, the public tax sale certificate was issued November 3, 1923, and subsequent taxes were paid by the holder thereof. Action to foreclose was properly commenced "a few days before the five years expires." A judgment was entered determining the land not subject to assessment in 1930. Claim for refund was filed January 21, 1931, and disallowed February 7, 1934. On appeal, the action of the county board was approved.

The determining principle appears to be: The liability of a county to the holder of a tax sale certificate for the refund of taxes illegally assessed by the county is measured solely by the statute relating thereto, which bars such claims made after the lapse of five years from the date of the certificate sought to be refunded, notwithstanding the prosecution of a timely action in a court of competent jurisdiction to secure a foreclosure of the tax lien.

It follows that in the entry of the judgment appealed from the district court erred. Such judgment is accordingly reversed and the action of plaintiff dismissed.

REVERSED AND DISMISSED.

KROGER, District Judge, dissenting.

I find myself unable to agree with the majority opinion.

This case presents a simple question, viz.: When does the statute of limitations commence to run against a claim for refund for taxes paid under a void tax sale as provided by section 77-2054, Comp. St. 1929?

By an involved process of reasoning, a majority of this court has found that the five-year limitation contained in section 77-2049, Comp. St. 1929, applies also to the remedy provided by section 77-2054, Comp. St. 1929, and that in the instant case the statute of limitations commenced to run from the date the void tax sale certificate was issued. For a better understanding of the question thus presented, I will restate a few of the facts.

The tax sale certificate was issued November 3, 1930. In June, 1935, petition was filed to foreclose the same. From the decree of foreclosure an appeal was taken, and finally in 1938, on rehearing, this court reversed the judgment of the district court and dismissed the action. This was the first time that any court had declared the tax sale entirely void and was more than three years after the action to foreclose was commenced, so that, even if the plaintiff had filed her action at the earliest possible date, the decision holding her tax certificate void would not have been rendered until more than five years after the date of such certificate and, according to the majority opinion, too late for her to file her claim against the county.

The majority opinion does not point out what remedy a purchaser of a void tax sale certificate has when, through no fault of his own, a court of competent jurisdiction, within the five-year period, finds the certificate to be valid and then on appeal, after the five years have elapsed, the appellate court holds the certificate void. Certainly, the state, through its constituted taxing bodies, should not be permitted to take the money of a citizen for taxes alleged to be due and then, when the tax has been declared invalid, plead the statutes of limitations. The answer that the tax purchaser acts at his peril does not meet the situation. The state is interested in the prompt payment of taxes and the provisions of our statutes for the sale of property for de-

linquent taxes are intended to bring about that result. The legislature did not intend that the taxing authority be operated as a shell game, either with or without judicial sanction.

In my opinion, section 77-2049 deals entirely with valid tax sale certificates, and simply provides that an owner of a tax sale certificate must do one of two things within five years. He must demand a deed or commence an action to foreclose. Nothing more is required or contemplated. Plaintiff complied with this section by commencing her action to foreclose within the five-year period. Thereafter a thing happened that was not covered or contemplated by section 77-2049, to wit, a holding by a court of competent jurisdiction that the tax sale certificate was void. This holding gave the right to a new cause of action under section 77-2054, and since the latter does not contain a limitation clause, it would be governed by our general statute of limitations, and not by section 77-2049. To hold that it is governed by the latter section is equivalent to saying that the statute of limitations will run against a cause of action before the same accrues. A holding by a court of competent jurisdiction that the tax sale was void is a condition precedent to a claim under section 77-2054. How, then, can his cause of action be said to accrue before such finding is made? As is demonstrated by the facts of this case, the owner of the certificate is helpless to obtain such a finding within five years from the date of the certificate. He has no power to compel the court to make any finding within any specified time, yet the majority opinion not only holds that the action accrued, but that it was barred before any court of competent jurisdiction found the tax sale certificate to be void. This strikes me as being directly the opposite of what the legislature intended and stated in words that require no interpretation when they enacted section 77-2054.

I am not unmindful of the holdings in the cases of *Gibson v. Dawes County*, 129 Neb. 706, 262 N. W. 671, *Wetzel v. Dawes County*, 129 Neb. 711, 262 N. W. 674, and *Kennedy*

*v. Dawes County,* 130 Neb. 227, 264 N. W. 452. These cases show the danger of blindly following precedent. The first case decided was *Gibson v. Dawes County, supra,* and was disposed of on demurrer. This court, in that case, said: "From the standpoint of the demurrer and of invulnerable pleading, therefore, the petition does not show that the taxes which plaintiff seeks to recover back were all void or that his tax sale certificate was invalid." And while there is some dictum to the effect that the statute of limitations had run, the decision was based on the sufficiency of the pleadings. The other cases cited are based upon the supposed holding in *Gibson v. Dawes County, supra.* If these cases state the correct rule of law, they are controlling. I submit, however, that the *Gibson* case can be distinguished, and that the other cases do not correctly state the law, are wrong in principle, and should be overruled.

I am authorized to state that Hastings, District Judge, joins with me in this dissent.

SIMMONS, C. J., dissenting.

I join in the dissent. I am not able to reconcile the conclusion reached by the majority with right or justice. Nor do I believe that the legislature ever intended that such a construction would be placed upon its acts.

I am authorized to say that Carter J., though not participating in the decision of this case, concurs with the propositions of law announced in the dissenting opinion.