YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE CITY OF LINCOLN, APPELLEE, v. LANCASTER COUNTY ET AL., APPELLANTS.

FILED APRIL 20, 1921.  No. 21276.

1.  Taxation: EXEMPTIONS. Provisions for the exemption of property from taxation should be given a fair and reasonable interpretation in order to ascertain the true intent as to their scope, and then should be strictly applied and enforced so that the limits thus defined shall not be unduly enlarged or extended.

2.  ———: ———: "CHARITABLE ORGANIZATION." A Young Men's Christian Association, incorporated to promote the moral, physical and educational welfare of young men, and supported in large part by voluntary contributions from the public, which in its practical work, as outlined in the opinion, actually carries out those purposes by a system of moral, physical, religious and educational training and influence for the betterment of its members and the general benefit of the community, is a charitable organization, and its building, in so far as it is actually and necessarily used for those purposes, is exempt from taxation under section 6301, Rev. St. 1913.

3.  ———: ———. Where certain floor space in a building owned and occupied by a charitable organization is leased to outside parties

for the operation of a cafeteria, open to and patronized by the general public as well as the membership, the rentals being applied to the purposes of the organization, that portion of the building so leased is not exempt from taxation, although the maintenance of the cafeteria therein is not only financially helpful to the organization but promotes its charitable purposes by attracting people to the building.

4. ———: ———. The fact that a certain portion of the building of a charitable organization which is not exempt from taxation cannot be separated from the residue by definite lines is no obstacle to the assessment of the property for taxation to the extent of the value of that portion thereof which is taxable, having due reference to the taxable value of the entire property.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. Reversed, with directions.

Charles E. Matson, Harry R. Ankeny and Max G. Towle, for appellants.

Burkett, Wilson, Brown & Wilson, contra.

DORSEY, C.

The Young Men's Christian Association of the city of Lincoln is the owner of two lots, covering 100 by 142 feet of ground, in the business district, upon which stands a five-story brick building occupying nearly the entire two lots. This real estate was valued by the county assessor for taxation for the year 1917 at $100,000. Objections were filed with the county board of equalization on the ground that the property was used exclusively for religious, educational and charitable purposes, and was therefore exempt from taxation. The objections were overruled, but the valuation was reduced to $80,000. Appeal was then taken to the district court, where the objections were sustained and the property held to be exempt. The cause is now before this court for review on appeal by the taxing authorities.

The main part of the building, 100 by 100 feet in size, is occupied on its first floor by the offices of the association, a lobby and a cafeteria; on the second floor is another cafeteria, and the remainder of that floor is devoted to

assembly rooms for the general use of the members, and for holding meetings connected with the various activities of the association, also by library, reading and study rooms and class rooms in connection with the religious and educational work.    Part of the third floor is also utilized for the foregoing purposes; the remainder of the third floor and all of the fourth and fifth floors are divided into sleeping-rooms occupied by members who lodge there. On the north side of the main part of the building, and as a part of the same structure, there is a space 42 by 100 feet occupied, all but the two top stories, by the gymnasium and other rooms devoted to physical exercise, with baths, swimming pool, bowling alleys and billiard tables in the basement, where there are also a tailor repair shop and a barber shop.    The two floors above the gymnasium in this part of the building are also occupied by sleeping-rooms.

The general purpose of the association is to promote the moral, physical and educational welfare of young men, to bring them under moral and religious influences, to improve their characters and to stimulate in them higher ideals of life and conduct.

The active work by which the association seeks to carry out these aims is partly among its own membership and partly in the effort to extend its influence outside, into and over the general community.    The advantages and opportunities offered to its members are designed to influence young men to join the association and thus to bring as many as possible under its direct influence and supervision.    At the same time, meetings participated in by organizations or groups interested in religious and other phases of community and home life are welcomed and accommodated, without charge, in its assembly rooms constantly throughout the year.    Among these are lectures to parents on their relations and duties to boys, and also boy scout meetings.    A boys' department is maintained of which boys may become members, entitling them to the use of the gymnasium, baths, games and other

privileges.    There are also meetings of the Sunday-school institute, in which instruction is given in Bible study and Sunday-school teaching, to aid and supplement the local church work along that line.

The members of the association and others who come to the building are given the benefit of religious influences by means of Bible classes and meetings of a religious character regularly held on Sunday and throughout the week.    The educational work, under the supervision of an educational director, consists of both day and night schools, in which the common branches, languages and technical subjects are taught, and also health clinics teaching the functions and care of the body.    Several class rooms in the building are used for this work.

The department of physical exercise and improvement, in charge of a physical director, is an important feature in the program of the association, and the essential relation of proper development of the physical requirements of young men to their mental and moral life is strongly emphasized.    Music, games and other recreations are provided, and the general plan pursued by the association seeks to bring the entire routine of life of young men and boys into proper relation with their physical, mental and spiritual needs.

The membership of the association consists of active members who must be members of some protestant evangelical church, and who alone have the right to vote, and associate members to whom no religious test is applied, and who, equally with the active members, enjoy the other privileges of the association.    There are about 1,700 members and the annual membership fee is $10. Revenues are made up of the membership fees, the income from the 117 rooms occupied by members, the cafeteria, barber shop and tailor shop, together with the small fees charged for games and for certain services for which members are required to pay. The total falls about $1,000 a month short of the amount necessary to pay the running expenses, and that deficit is made up by voluntary con-

tributions of liberally disposed persons.

The Constitution and statutes of this state permit exemption from taxation only in case the building was, during the year for which it was assessed, "used exclusively * * * for schools, religious * * * and charitable purposes." Rev. St. 1913, sec. 6301. The contention of the appellee is that it is a religious and charitable institution, and that the building in question, being used for the promotion of its general purposes, is, in a legal sense, used for religious and charitable purposes, although parts of the building are used for purposes which, if dissociated from and considered apart from their utility in carrying out the general plan, are not strictly either charitable or religious; such uses being merely incidental and not destructive of the exempt character of the property.

The use of the property is, under our law, the criterion by which to determine whether it is or is not exempt from taxation. It is therefore essential to determine, in the first place, whether the association, not in its aims and purposes alone, but in what it actually does to carry them out, is religious or charitable, before it can be decided that any of the uses to which the building was put partake of those characteristics. This court said in *Young Men's Christian Ass'n v. Douglas County,* 60 Neb. 642, 52 L. R. A. 123: "It is to be conceded at the outset, as it is admitted by the demurrer to the petition, * * * that the object and purposes of the appellant corporation are such as to exempt the property, used exclusively by it for the purposes of its organization, from taxation under the laws of the state." No such concession can be made in the state of the record before us, and we shall therefore proceed to inquire whether the appellee may properly be described as a religious or charitable organization.

Under facts with reference to the objects and activities of the Young Men's Christian Association there under consideration not differing essentially from the corresponding facts in the instant case, it was held in *Little v.*

*City of Newburyport,* 210 Mass. 414, Ann. Cas. 1912D, 425, that the association, though not giving charity in its narrowest sense, was in its essence a benevolent or charitable institution, within the meaning of those words in the statute. In *Commonwealth v. Young Men's Christian Ass'n,* 116 Ky. 711, 105 Am. St. Rep. 234, it was concluded that a similar organization was an institution of "purely public charity" under the statute of Kentucky. That decision was reaffirmed in *Corbin Y. M. C. A. v. Commonwealth,* 181 Ky. 384. A similar organization devoted to the welfare of young women was held to be a purely public charity in *Philadelphia v. Women's Christian Ass'n,* 125 Pa. St. 572.

The supreme court of Louisiana, on the other hand, held in *State v. Board of Assessors,* 52 La. Ann. 223, that a Young Men's Christian Association could not claim exemption of its building from taxation on the ground that, because its work tended to improve and elevate young men, the building was actually used for charitable purposes. And in New Jersey, also, it was held in *Trustees Y. M. C. A. v. City of Paterson,* 61 N. J. Law, 420, that statutes exempting private property must be given the narrowest interpretation of which they are reasonably capable; that charitable purposes are eleemosynary purposes, in the sense of aid to the needy, and that, because the members of a Young Men's Christian Association are not recipients of charity but pay a price deemed adequate for what they get, its building was not used exclusively for charitable purposes.

The theory that the rule requiring strict construction of a tax exemption statute demands that the narrowest possible meaning should be given to words descriptive of the objects of it would establish too severe a standard. Rather ought it to be the rule that such words as "charitable" should be given a fair and reasonable interpretation, neither too broad nor too narrow, in ascertaining the true intent as to the objects of exemption, and then that the statute should be strictly applied and enforced in

order not unduly to extend its scope. The rule does not call for a strained construction, adverse to the real intention, but the judicial interpretation of such a statute should always be reasonable. 37 Cyc. 894.

Not only in cases dealing with Young Men's Christian Associations, such as are hereinbefore cited, but in numerous cases dealing with tax exemptions claimed by other institutions in which some analogy is to be found, the courts have defined "charity" to be something more than mere alms-giving or the relief of poverty and distress, and have given it a significance broad enough to include practical enterprises for the good of humanity operated at a moderate cost to those who receive the benefits. *Franklin Square House v. City of Boston,* 188 Mass. 409; *Episcopal Academy v. Philadelphia,* 150 Pa. St. 565; *Brewer v. American Missionary Ass'n,* 124 Ga. 490; *City of Waycross v. Waycross Savings & Trust Co.,* 146 Ga. 68; *Congregational Sunday School v. Board of Review,* 290 Ill. 108.

The record in the instant case shows, it is true, that it is the policy and custom of the association to require its members to pay a moderate charge for some of the privileges, facilities and amusements that they enjoy, while some of them are free. The net financial result, however, is that the whole institution is run at a loss, which in the year preceding the trial below amounted to nearly $13,000, and which must be made up by popular subscription. Reason and authority are opposed to the proposition that an institution otherwise charitable will be deprived of that character by the mere fact that charges for facilities and services are made to individual members, which not only do not result in profit, but which fail, in the aggregate, even to make the institution self-sustaining, and the appellant's contention to that effect must be denied.

It follows from the foregoing discussion and review of the judicial opinions bearing upon that question that the appellee is to be regarded as a charitable organization,

both in its professed purposes and by virtue of its actual performances in the practical work that it does for the general benefit of society in the elevation and betterment of young men and boys. The use to which it puts its building in carrying out its work must, therefore, be characterized, in its general aspect, as charitable, and the building in question is used for charitable purposes, except in so far as some part thereof may be used for purposes foreign to or inconsistent with its dominant purpose.

This brings us to the argument of the appellant that the cafeteria, tailor shop and barber shop maintained in the building are merely business ventures carried on, for profit, for the accommodation of members and others who avail themselves thereof, and are too remotely connected with the general purposes of the association to be treated as uses for charitable purposes of the building or of the parts thereof occupied by them.

The cafeteria is operated under an agreement by which the necessary floor space is leased to outside parties, who pay 10 per cent. of the gross receipts as rental. The lessees supply the fixtures, with the option reserved to the appellee to purchase them at any time, and thereupon the lease shall terminate. The revenue to the appellee from the cafeteria averages about $700 a month. The tailor shop rents for $15 a month; the barber is engaged by the month, and the appellee derives about $25 a month net revenue from the barber shop. The cafeteria serves the members and those of the general public who choose to come.

The appellee's argument with reference to these facilities is that they are necessary to the complete carrying out of its plan to make it attractive to young men and to the public generally to come to the building and thereby strengthen and extend the influence of the association. Not only for the members, but for their near relatives and friends it is a valuable auxiliary to the work to get groups of men together at meal-time, which is the best

and in some cases the only practicable opportunity to arouse their interest in the work of the association, and the revenue from the eating establishment is a great help in keeping up the general expenses. The tailor and barber service is necessary for the accommodation of the roomers in the building.

The question of the maintenance of a restaurant or eating place in connection with buildings of this kind for which exemption from taxation was claimed has been considered by the courts in several cases. In *Philadelphia v. Women's Christian Ass'n, supra,* in which there was a restaurant in the building, it was held that the building was exempt, notwithstanding the fact that the revenues of the association were in part derived from payments for board by those for whose temporal, moral and religious welfare the association exists; not being intended as a source of profit, and being in fact insufficient to defray expenses, the annual deficit being made up from voluntary contributions. And in *Corbin Y. M. C. A. v. Commonwealth, supra,* it was held that the operation of a restaurant in the building, from which a revenue was derived from members and others, but without profit, was consistent with the charitable purposes of the association. But in *Young Men's Christian Ass'n v. Keene,* 70 N. H. 223, in which part of the building was rented for a restaurant, with the primary object of obtaining revenue to assist in carrying on the work and the incidental object of drawing people to the vicinity of the building in order to interest them in the work, it was decided that the association was not entitled to exemption for that portion of the building occupied by the restaurant.

The conclusion arrived at in the Kentucky case just referred to was based, in part at least, upon the peculiar language of the Constitution of that state, which exempts "institutions of purely public charity." The opinion quotes from a previous decision of the same court to the effect that, since the "institution" is exempted without any qualifying words showing that the exemption is re-

stricted to property used by or connected with the institution, the exemption applies to the corporate entity, including all its property. In the *Women's Christian Ass'n* case, also, the Pennsylvania Constitution exempts the property of all institutions "maintained by public and private charity." There is an obvious distinction between such provisions and the provision of our statute confining the exemption to property used exclusively for charitable purposes. The New Hampshire statute upon which is based the decision in *Young Men's Christian Ass'n v. Keene, supra,* holding that portion of the building used for a restaurant to be taxable, exempts the property "to the extent that it is used for the purposes of the association," thus laying emphasis upon the use, as does our statute.

In *Young Men's Christian Ass'n v. Douglas County, supra,* in which the first floor of the building was rented for business purposes, the rent being applied to the work of the association, the rented portion was held taxable. In the case at bar certain floor space was leased and the rental went into the general fund of the appellee for the promotion of its purposes. That the object of having the cafeteria there was to derive revenue from its use by the public, together with the appellee's membership, was frankly conceded in the testimony. It was undeniably, to a certain extent, a commercial enterprise, carried on in competition with other similar business that is taxable. The fact that the money derived therefrom was used for the general purposes of the association, or that it was incidentally desirable in the promotion of those purposes, does not alter the fact that it was a use of a portion of the building differing essentially in character from the primary uses and purposes to which the building and the association itself were devoted. *Young Men's Christian Ass'n v. Douglas County, supra; Young Men's Christian Ass'n v. Keene, supra.* That portion of the building occupied by the cafeteria was therefore not exempt from taxation. The evidence with reference to the barber shop

and tailor shop is that they are accessories required in the building in view of the number of lodgers there, that the amount of space they occupy is insignificant, and that their maintenance is justified in carrying out the general purposes of the association.

There arises the final question, whether it is feasible to segregate the space occupied by the cafeteria from the rest of the building for the purposes of taxation and, if so, by what method. In *Young Men's Christian Ass'n v. Douglas County, supra,* it is said: "It is not necessary that the property should be such as to permit of its separation into distinct and definite parcels or tracts of land." In *Library Ass'n v. Pelton,* 36 Ohio St. 253, in which certain rooms on each floor of a building were rented out, and were therefore not exempt, it was held: "The fact that the building is so constructed, that the parts leased or otherwise used with a view to profit cannot be separated from the residue by definite lines, is no obstacle to a valuation of such parts for purposes of taxation, having due reference to the taxable value of the entire property." To the same effect is *Board of Home Missions v. Philadelphia,* 266 Pa. St. 405. No reason appears why the taxing authorities cannot arrive at a just valuation of that portion of the building which is taxable, in its relation to the entire property, and assess the property in that amount.

The judgment of the court below should be reversed and the cause remanded, with instructions to ascertain the taxable value of the property in accordance with this opinion, and to certify the same to the proper officer according to law.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with instructions to ascertain the taxable value of the property in accordance with this opinion, and to certify the same to the proper officer according to law, and this opinion is adopted by and made the opinion of the court.

FLANSBURG, J., not sitting.                    REVERSED.