COUNTY OF DOUGLAS, STATE OF NEBRASKA, ET AL.,
APPELLEES, V. OEA SENIOR CITIZENS, INC., A
CORPORATION, APPELLANT.
OEA SENIOR CITIZENS, INC., A CORPORATION, APPELLANT, V.
COUNTY OF DOUGLAS, STATE OF NEBRASKA, ET AL.,
APPELLEES.
111 N. W. 2d 719

Filed November 17, 1961. Nos. 34956, 35055.

*Frank C. Heinisch* and *Eisenstatt & Lay*, for appellant.

*John J. Hanley, Arthur D. O'Leary,* and *William F. Ryan,* for appellees.

*Kenneth H. Dryden, J. M. Emmert,* and *Wade Stevens,* amici curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

Here are two actions both of which are so related to the same subject and the same parties as to permit them to be regarded as a single action calling for adjudication upon but one basic theory of relief. The first one, numerically speaking, contains the basic theory and the second may well be said to be secondary and incidental to the first.

In the first action the County of Douglas, State of Nebraska, and Joseph Stolinski, County Assessor of Douglas County, Nebraska, are plaintiffs and appellees. OEA Senior Citizens, Inc., a corporation, is defendant and appellant.

By their petition the plaintiffs declared their own capacities as plaintiffs and the legal status of the defendant, which was that of a nonprofit and nonstock corporation, organized under the laws of the State of Nebraska. The petition was filed on October 23, 1959. Therein it was alleged that the defendant was the owner of certain real estate in Douglas County, Nebraska, on which was located housing facilities, where services were provided for elderly persons, and where an educational program in the field of geriatrics designed to contribute to health, happiness, and usefulness in longer living was to be carried out.

It was further alleged that previous to March 1, 1959, the board of equalization of Douglas County, Nebraska, determined that this property was exempt from taxation; that on March 1, 1959, Joseph Stolinski in his capacity as county assessor determined that it was not

exempt and placed it on the tax rolls for taxation; that on June 22, 1959, on complaint of the defendant the board of equalization found that it was exempt and again removed it from the tax rolls; and that on August 25, 1959, the board of county commissioners of Douglas County, Nebraska, directed the county attorney to commence this action the purpose of which was to have determined in this, a declaratory judgment action, whether or not this property was exempt from taxation under the Constitution and laws of the State of Nebraska. The prayer was for a declaratory judgment under sections 25-21,149 to 25-21,164, R. R. S. 1943, declaring that the property involved was not used by the defendant exclusively for educational, religious, or charitable purposes, but that it was owned and used for financial gain or profit.

To the petition the defendant filed a demurrer. The grounds of the demurrer were (1) that the court was without jurisdiction of the person or the subject matter, (2) that there was a defect of parties defendant, and (3) that the petition did not state facts sufficient to constitute a cause of action. This demurrer was overruled.

For the purpose of clarity in the consideration of the substantial issue involved in the case it will be said here that the demurrer was, as will later appear, properly overruled. There is but one substantial issue and, as will be made clear later herein, it is that of whether or not the property in question was exempt from taxation under the Constitution and statutes of the State of Nebraska. Only one ground of the demurrer is mentioned in the assignments of error. That one is that the district court did not have jurisdiction of the subject matter. This is based on the theory that the matter involved was not properly one upon which an adjudication could be made in a declaratory judgment action.

Declaratory judgments and to what they may extend are provided for in sections 25-21,149 and 25-21,150, R.

R. S. 1943. It is not deemed necessary to quote their provisions herein in their entirety since there is no question in this case as to the contents and meaning of these provisions. For clarity, however, it appears advisable to quote section 25-21,149, R. R. S. 1943, which is the definitive provision, as follows: "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." The true question is whether or not there is a present right to resort to the declaratory judgment process to determine the question under consideration.

On the face of the record it appears that this should be determined adversely to the defendant by reason of the declaration and prayer of an answer which the defendant filed in the case by which it is bound. However the matter will be considered at length later herein. Therein the defendant points out that this is the subject of a declaratory judgment and prays that the court "render a declaratory judgment." This was a part of the answer on which the case was tried. See, In re Estate of McCleneghan, 145 Neb. 707, 17 N. W. 2d 923; Barry v. Barry, 147 Neb. 1067, 26 N. W. 2d 1.

By the answer which has been mentioned the capacities of the plaintiffs alleged in the petition and the allegations therein contained as to the organization and existence of the defendant, the ownership of the property in question, and as to what had been done by the plaintiffs, the board of equalization, and the defendant starting with the designated incident prior to March 1, 1959, and the specifically dated incidents occurring thereafter to and including August 25, 1959, were admitted.

Further answering the defendant described the property, its present and prospective uses, its plan of management, and its maintenance.

It pleaded that the building on the land was 12 stories in height and in it were 132 identical one-room efficiency units above the first floor, and on the first floor were a dining room, lounge, office, and an apartment for a custodian; that a custodian, cook, and nurse were provided; that senior citizens living in the building served on a voluntary basis in the kitchen, dining room, and office, and in the performance of other duties in the building; that regular programs were arranged for the senior citizens for community services, art and craft work, and for entertainment and social activities; that a charge of $70 a month for each unit was made to the occupants toward cost of maintenance and amortization of a mortgage on the property; that it was contemplated that any excess required for cost of maintenance and amortization would be paid by the Omaha Education Association; that no part of the income was for financial gain or profit to the defendant or the occupants of the building; and that the meals were served on a cost basis.

It further pleaded that it was a nonprofit and nonstock corporation organized and existing under sections 21-1501 to 21-1508, R. R. S. 1943; that it owned and used this property in trust for the Omaha Education Association; that as owner it did not own or use it for financial gain or profit to either the owner or user; and that thus it was exempt from taxation.

It appears that although this is not a complete summary of the answer it is sufficient upon which to present the question on which determination is required.

A portion of the answer not summarized sets forth what a directive of the Federal Housing Administration contained in the determination of whether a mortgage shall be exempted from taxation under the theory that a project designed for occupancy by elderly persons at

low cost to them on which the loan is made is a charitable purpose. This has not been summarized on the ground that what was said there is of no controlling significance in this case. The reason for this is that it could hardly be contended that a directive of a federal administrative department could add to or take anything from the language and meaning of a constitutional or statutory provision of the State of Nebraska. This applies to directives in this area coming from any federal administrative agency on the question of the taxable status of this property.

The plaintiffs filed a reply but as to it nothing need be said except that it is a denial of new matter in the answer.

After issue was thus joined the plaintiffs moved for summary judgment in their favor and the defendant moved for summary judgment in its favor. After hearing, the motion of the plaintiffs was sustained and that of the defendant was denied and judgment rendered accordingly. From this judgment the defendant has appealed.

The controlling facts as disclosed by the record are not in dispute. The plaintiffs, as is clear, presented their motion for summary judgment on their petition and the allegations of fact in the answer of the defendant, together with the evidence adduced, which described the factual status of the defendant on which must depend the decision as to whether or not this property was exempt from taxation. The defendant presented its motion on the same evidentiary background.

The petition and answer, to the extent necessary to a determination of the questions involved, have already been summarized. The following is a summary of the pertinent evidence adduced at the hearing.

From this evidence it is ascertained that charges to residents would be no more than costs involved; that occupancy was not limited to retired teachers but applications were subject to review by the board of directors

of the Omaha Education Association; that at the time of hearing 79 occupants of the building had made contributions to the Omaha Education Association in amounts ranging from $1,200 to $1,500, which contributions were nonrefundable; that no resident acquired any proprietary interest; that each resident was required to pay $70 a month and if the cost of maintenance is increased by taxation the increase would be passed on to the residents; that meals were optional at low cost and could be taken for $1.33 a day; that the right of removal of residents by action of the defendant was not in general prohibited, however in the record is an exhibit in blank which is denominated "Receipt" which if executed would grant the donor of $1,500, when retired, the privilege of living in the home for life subject however to the obligation to pay a proportionate share of monthly expenses, maintenance, and amortization of the loan, and subject to the rules and regulations adopted for the government of the home; that for occupants there were no leases in writing; that a third or more of the occupants were not teachers; that occupants were accepted without ability to pay; and that some of the occupants were subsidized by receiving work and assistance in order to enable them to pay their rent in the amount of $70 a month.

As becomes apparent the basic question presented for determination is that of whether or not the property of the defendant was exempt from taxation. This in turn must be determined by the true meaning of Article VIII, section 2, Constitution of Nebraska, as follows: "* * * The Legislature by general law may exempt property * * * owned and used exclusively for educational, religious, charitable * * * purposes, when such property is not owned or used for financial gain or profit to either the owner or user. * * * No property shall be exempt from taxation except as provided in the Constitution."

The Legislature implemented this grant of power by the following which appears in section 77-202, R. R. S.

1943: "The following property shall be exempt from taxes: * * * (c) Property owned and used exclusively for educational, religious, charitable * * * purposes, when such property is not owned or used for financial gain or profit to either the owner or user; * * *."

On the question of whether or not the declaratory judgment process is available it has already been pointed out that the defendant has unequivocally stated that the issues are properly determinable under the declaratory judgment process. It does not appear necessary to say more on the subject than that this amounts to a waiver of its right to complain, provided of course nothing has transpired to bar the right and power of the court to make a determination upon what has been referred to herein as the primary issue.

The defendant urges that there was a bar to the right to maintain the action since in effect it says that the property was declared exempt by the board of equalization on June 22, 1959, and that from this action no appeal was taken, hence that was binding, and that no right of action was thereafter available to determine the question of whether or not this property was exempt from taxation.

From the brief of the defendant it is at least inferable that it contends that the action of the board of equalization became res judicata with reference to the exemption status of this property.

A sufficient answer to the question of res judicata is that in this action there is no pleaded purpose to in anywise cause to be disturbed what was done by the board of equalization on and prior to June 22, 1959. The pleaded purpose of the plaintiffs was to have the tax status of the property ascertained for the period thereafter. The defendant admitted that this was true by its answer, as follows: "* * * the action of the County Assessor of Douglas County, in placing the property of the defendant on the tax rolls, is discriminatory and will result in continuous litigation and appearances be-

fore the County Board of Equalization unless this court renders a declaratory judgment determing (sic) whether or not the property of the defendant is subject to taxation or exempt under the Laws and Constitution of the State of Nebraska.

"WHEREFORE, the defendant prays that the court render a declaratory judgment, finding and determining that the property of the defendant is owned and used exclusively for educational and charitable purposes and is exempt from taxation under the Laws and Constitution of the State of Nebraska."

On the question of jurisdiction generally of the court to entertain this action and to adjudicate on the record presented the question of whether or not the property was exempt from taxation, it is pointed out again that this action is related only to the status of the property at the time the action was commenced and thereafter, and not before. It is further pointed out that the county assessor, a party plaintiff in the action, was required annually in the manner provided by statute to supply "a list of the taxable lands and lots in his county." See § 77-1303, R. R. S. 1943. As is clear the assessor in the performance of his service included the property of the defendant. The defendant asserts in substance that this inclusion would have the effect in the last analysis of imposing a void tax upon the property.

The decisions of this court make it clear that an independent action is proper in which it may be determined whether or not property which has been placed upon the assessment rolls is exempt from taxation. This is true notwithstanding the availability of statutory remedy. See, Offutt Housing Co. v. County of Sarpy, 160 Neb. 320, 70 N. W. 2d 382, affirmed, 351 U. S. 253, 76 S. Ct. 814, 100 L. Ed. 1151; Ainsworth v. County of Fillmore, 166 Neb. 779, 90 N. W. 2d 360.

The type of independent action to which the language of these cited cases was directed was injunction and it is of course true that the appropriate remedial

process in the case of assessment and taxation and a claim of exemption would be that of injunction.

. It is concluded therefore that the issues presented herein are subject to determination in a declaratory judgment action, which in essence under the circumstances is injunctive in determining the tax status of this property.

There are two remaining questions for consideration in this opinion to the extent that it concerns case No. 34956. The first is that of whether or not on the record before the court a summary judgment could be properly rendered. The second is that, if it be found that it could be properly rendered, was the summary judgment which was rendered the one required under law?

The statutory provisions relating to summary judgments are found in sections 25-1330 to 25-1336, R. R. S. 1943. In interpretation and application of these provisions this court said in Ingersoll v. Montgomery Ward & Co., Inc., 171 Neb. 297, 106 N. W. 2d 197: "The Summary Judgments Act authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is clear what the truth is, and that no genuine issue remains for trial. The purpose of the statute is not to cut litigants off from their right of trial by jury if they really have issues to try." See, also, Mecham v. Colby, 156 Neb. 386, 56 N. W. 2d 299.

The controlling facts in this case are not in dispute. There is tacit agreement on this proposition, since the plaintiffs have moved for summary judgment in their favor, and the defendant has likewise moved, on the basis of the same record.

If under the facts which, as has been pointed out, are not in dispute, it may be said that this property was owned and used exclusively for educational, religious, or charitable purposes and not for financial gain or profit to the owner or user it was exempt from taxation and the judgment of the court was erroneous

and should be reversed. On the other hand if it was not so used the motion for summary judgment made by the plaintiffs was properly sustained and the judgment should be affirmed.

It may be said without additional remarks that the property of the defendant was neither owned nor used for religious purposes. It may also be said that it was not owned or used exclusively for educational purposes. There was evidence of slight educational use which was incidental and beneficial to occupants but this was not in any sense exclusive.

As to whether or not it was owned and used for financial gain or profit to the owner and user the simple and unequivocal answer is that it was not.

These observations therefore make it clear that the decision herein shall turn on the question of whether or not this property was owned and used exclusively for charitable purposes. The simple answer is that it was not. This answer in the last analysis flows from the meaning of the word "exclusively" as used in the statute and the Constitution. The meaning of the word is so clear that it requires no interpretation but only application. From examination of the record it conclusively appears that this property was not owned and used exclusively for charitable purposes.

There can be no doubt that some use and purpose was charitable and all of it highly worthy and commendable, but it does not necessarily follow that in any true sense the use was exclusively charitable.

Charity and charitable use are familiar terms in both lay and legal parlance, but they are not capable of exact definition. It may well be said that whether or not an act or a use of property is charitable must in each instance be determined upon its own facts. In the light of this uncertainty of definition and the exclusory exaction of the Constitution and the statute it appears that the determination may depend appropriately upon disclosed incidents of operation. In short and in par-

ticular, does or does not the undisputed evidence disclose a use or uses which are exclusively charitable?

There is here a record of incidents and practices which make it clear that this property was not owned and used exclusively for charitable purposes.

The design and purpose of the building on the land was to furnish housing to selected people at low cost. There is nothing to indicate that it was to be below the cost of the service furnished. In design the purpose was that each occupant should be charged his or her part of operation, maintenance, and the amortization of the mortgage on the property, and for the cost of the meals taken. At the time of trial the charge for occupancy was $70 a month. In this connection it is true that inability of an occupant to pay in whole or in part might arise but the occupant might be allowed to remain. This did not however abate the charge. The purpose was to obtain payment from other sources such as the Omaha Education Association or from contributions from other sources. There was no right to be granted to occupants to remain without payment for occupancy from some source. In fact no right to remain in occupancy other than at the will of the defendant was a declared purpose except as to a limited class of occupants. This class included only those making a donation of $1,500 to the Omaha Education Association toward the cost of building a home for retired people. This was extended to them for life on retirement on condition that they pay the proportionate share of monthly expenses, maintenance, and amortization of loan, and subject to the rules and regulations adopted for the government of the home.

In this it is not difficult to perceive that the operations of the defendant included worthy charitable aspects but it may not well be said that this ownership and use was exclusively charitable. No definition of charity found in any available lexicon is sufficient upon which to declare what has been described in this record as

exclusively charitable, that is that the furnishing of low-cost housing at its real cost is charitable.

There have been decisions in other jurisdictions which are contrary to this view, the citations of which will not be included herein. This court is unwilling to follow what is regarded as fallacious reasoning.

This precise question has not previously been before this court but the measure of the application of "exclusively" has been declared with certainty. In Nebraska Conf. Assn. of Seventh Day Adventists v. County of Hall, 166 Neb. 588, 90 N. W. 2d 50, it was said: "Property is exempt from taxation in this state if it is owned and used exclusively by a religious or educational institution in carrying on its educational work, if all the income from the property is used exclusively for the support of its educational endeavors, and if no financial gain or profit inures to the owner of the property." See, also, Iota Benefit Assn. v. County of Douglas, 165 Neb. 330, 85 N. W. 2d 726, 66 A. L. R. 2d 898.

The Ohio Supreme Court in Cleveland Branch of the Guild of St. Barnabas for Nurses v. Board of Tax Appeals, 150 Ohio St. 484, 83 N. E. 2d 229, in interpretation of constitutional and statutory provisions practically the same as the provisions being interpreted herein and in application to a state of facts not materially different from the factual situation involved here, said: "The members of the Cleveland Branch of the Guild of St. Barnabas for Nurses are to be commended for their activities in establishing and maintaining the guild house, but its present use does not entitle it to exemption under the statute cited."

In Beerman Foundation, Inc. v. Board of Tax Appeals, 152 Ohio St. 179, 87 N. E. 2d 474, in dealing with a like situation, the court said: "The use of the property in the instant case is primarily for furnishing low-rent housing and not excusively for charitable purposes."

It must be said therefore that on the basis of the record in case No. 34956 the district court properly ren-

dered a summary judgment in favor of the plaintiffs and against the defendant on the plaintiffs' motion, and also in favor of the plaintiffs and against the defendant on its motion.

Turning now to case No. 35055, it is pointed out that this is an independent action by OEA Senior Citizens, Inc., a corporation, plaintiff, against County of Douglas, State of Nebraska, and Joseph Stolinski, County Assessor of Douglas County, defendants, by which action the plaintiff sought a new trial on the ground of newly discovered evidence, or the discovery of new evidence having controlling significance after the judgment had been rendered in case No. 34956. In the transcript is a decree in which a finding was made in favor of the defendants and a judgment of dismissal of the petition was rendered. The appeal here is from that judgment of dismissal.

A summary of the alleged newly discovered evidence is that since the trial and decision in case No. 34956 information had been obtained that the Internal Revenue Service in the United States Treasury Department had ruled that the plaintiff was an organization organized and operated exclusively for a charitable purpose; that all contributions made to it were deductible by the donors as charitable donations for the purposes of federal income taxation; that bequests, legacies, devises, transfers, or gifts to the plaintiff or for its use were deductible for federal estate and gift tax purposes; that the plaintiff was exempt as a charitable organization from payment of federal income tax; and that it was not liable for taxes imposed under the Federal Insurance Contributions Act or the Federal Unemployment Tax Act.

If it be assumed that the necessary procedural steps were taken to bring the question of whether or not this information was of evidentiary value before the court, which is difficult to do since the transcript fails to disclose any process to cause the defendants to be treated

as parties to the action, since there is no bill of exceptions, and since there is nothing which under statute or rule of court could be regarded as a substitute for a bill of exceptions, or for a case stated, it must be said that the observations made with regard to case No. 34956 make it clear that there was no error in the rendition of judgment against the plaintiff. It was pointed out there that the actions and findings of federal administrative agencies may not be regarded as effective in the determination of the meaning of the words contained in the Nebraska Constitution and the Nebraska statutes.

For the reasons herein set out the judgments in case No. 34956 and in case No. 35055 are severally affirmed.

AFFIRMED.