YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF LINCOLN, NEBRASKA, A NEBRASKA CORPORATION, APPELLEE, v. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLANTS.

128 N. W. 2d 600

Filed May 22, 1964. No. 35616.

Ralph D. Nelson and Henry L. Holst, for appellants.

Stewart, Calkins & Duxbury, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action for a declaratory judgment finding that the plaintiff's property is exempt from taxation and enjoining the defendants from taxing said property. The trial court overruled the defendants' motion to dismiss the action, and found that the real property owned by the plaintiff, described as Lot 3, Block 64, Original Plat of the City of Lincoln, is and has been since its acquisition by plaintiff used exclusively for charitable purposes and is therefore exempt from taxation by the defendants under the Constitution, statutes, and laws of the State of Nebraska; that the taxes levied by the defendant City of Lincoln upon the real property as aforesaid were declared void and ordered canceled; that

the cloud upon plaintiff's title to the real estate arising from the apparent lien of taxes be removed and plaintiff's title be quieted against the same; and that the defendants and each of them and their successors in office be restrained and perpetually enjoined from in any manner enforcing or attempting to enforce the taxes assessed against said property. The defendants filed a motion for new trial which was overruled. Defendants appealed.

The plaintiff is now and has been since on or about July 3, 1893, a corporation organized and existing under and by virtue of the laws of the State of Nebraska pertaining to nonprofit corporations, with its principal office in Lincoln, Nebraska.

The defendant City of Lincoln is a municipal corporation organized and existing under and by virtue of the laws of the State of Nebraska, and is a body corporate situated in Lancaster County, Nebraska, and is now and has been since November 14, 1914, operating under its own home rule charter as permitted and authorized by the Constitution of the State of Nebraska. The mayor at the time of the signing of the pleadings was named as defendant. In addition, all members of the council of the city and the tax commissioner of the city were named as defendants. The mayor and the members of the city council constitute the board of equalization of the City of Lincoln, and constitute the governing and law-making body and the taxing authority of the City of Lincoln.

The defendants intend to keep the real estate owned by the plaintiff on the tax rolls for the years subsequent to 1962.

The defendants assign as error that the trial court erred in overruling their motion to dismiss the plaintiff's petition; and that the trial court erred in finding that the plaintiff's property has been used and is being used for charitable purposes within the meaning of the Constitution, statutes, and laws of the State of Nebraska,

and is not being used for financial gain or profit to the plaintiff or any one else.

For convenience we will refer to the Young Women's Christian Association of Lincoln, Nebraska, as the plaintiff or association; to the City of Lincoln, the mayor, council, and tax commissioner as defendants; and to Annie L. Miller Hall as Miller Hall.

The president of the board of directors of the plaintiff and who had been active in plaintiff's work for 10 years, testified that she was familiar with the plaintiff's program and the general policies of the plaintiff; that there is a national and international organization, as well as local organizations, and the plaintiff is a part of the national and international organization; and that the plaintiff was incorporated as a nonprofit corporation.

The purpose of the organization, as stated in the articles of incorporation, is as follows: "* * * to associate and maintain young women in personal allegiance and loyalty to Jesus Christ as Saviour and Lord; to inculcate and promote growth in Christian character and service, through physical, social, mental and spiritual training, organizing them into a social force for the extension of the Kingdom of God. Such accomplishment to be effected by and through educational, religious and charitable work and the means proper and appropriate thereto."

The president of the board of directors further testified that to carry out the purpose of the articles of incorporation the plaintiff has a program designed to bring into the lives of those participating an understanding of the principles of Christian living; that the program includes a wide range of activities, including classes and study groups on such things as arts and crafts, physical education, religious emphasis, and public affairs; that there are programs for young children, teenagers, and young adults; that men and women participate in various activities such as family nights, and the health and physical education programs; and that special programs

are provided for the physically handicapped, mentally retarded, Indian people within the community, and young girls coming into Lincoln seeking a place where they will be cared for mentally and morally. This witness further testified that the program with reference to young girls who come to Lincoln has to do with Miller Hall; that the group coming to Miller Hall seeks a safe, secure, and guided home where they will be cared for mentally and morally; that to become a member of the plaintiff association there are membership dues to be paid; that an application for membership is required; that at the time of preparing the application the person is interviewed and counseled with by a member of the plaintiff organization; and that there is also a membership card issued by the plaintiff.

This witness further testified that the plaintiff's central building is across the street from Miller Hall and is located at Fifteenth and N Streets; that the plaintiff also owns a building in Havelock; that Miller Hall is located at 1429 N Street, legally described as heretofore mentioned; and that all of the property owned by the plaintiff is tax exempt except Miller Hall which has been placed on the city tax rolls.

This witness further testified that in 1945, the Women's Division of the Chamber of Commerce felt there was a need for accommodations for young girls coming to Lincoln who were unprotected and had a small income; that Annie L. Miller, in her will, had left a sum of money for religious and charitable purposes and for the care of women and girls, but had not specified exactly how it should be done; that the bequest under the will and a drive conducted by the Community Chest for an addition to the original building now called Miller Hall furnished the means of securing the building; and that Miller Hall has been in operation since the fall of 1946. On cross-examination this witness testified that the girls must agree to the supervision and the policies adopted to be admitted and must meet the general rules of Miller

Hall; that a person must be a member of the plaintiff association to be admitted to Miller Hall; and that there is a membership fee of $2 a year unless a girl is in her teens in which case the membership fee is $1.

A member of the board of directors of the plaintiff testified that she was chairman of the committee that operates Miller Hall; that the lot the building is located on is 50 feet by 142 feet; that there are 32 sleeping rooms in the building; that these rooms are small with the exception of the corner rooms which are fairly good sized; that the building is air conditioned; that there are eight single rooms which accommodate one girl and the rest are double rooms which accommodate two girls; that there are three floors to the building; and that other rooms in the facility consist of a small reception room, a housemother's bedroom, a small living room, and in the basement a committee room, a recreation room for the girls, a small kitchenette, a small laundry, and a "Coke" machine. She further testified that in the recreation room there is a ping-pong table and also a library; that in the laundry room there are washing and drying facilities which are rented for the exclusive use of the girls; that these facilities are used to provide a home-like atmosphere and are not open to the public; that any girl making application is interviewed by the housemother and can only be taken if she is approved; and that any problem that requires special treatment is referred to the executive secretary of the plaintiff. She further testified that there is a committee consisting of lay people who govern Miller Hall; that there are certain rules and regulations that govern Miller Hall; that no advertising is done to attract girls to reside in Miller Hall; that the reason for Miller Hall is to make possible the use of its facilities for girls who attend schools of business and various training schools and cases sent to the plaintiff from social agencies; that no complaints have been registered by hotels or boarding houses relative to the use of Miller Hall; that the

group of girls who need help the most are poorly prepared financially for the period of time that would be required for them to take their training, and they need a place to go and be protected; and that Miller Hall has been used exclusively for the purposes heretofore stated since 1946.

A member of the administrative staff acting as business secretary for the plaintiff testified that she was familiar with the books and records of the plaintiff and the method of financing the activities of plaintiff association; that the source of funds for the operation of the plaintiff association consists of a small percentage from activities conducted by the plaintiff and the balance comes from the Community Chest, and deficits are made up from gift accounts; that the income allocable to Miller Hall comes primarily from rental charges which range from $18.50 a month to $32.50 a month; and that the rates are set at a level to cover the expenses of operating Miller Hall. This witness further testified that the income and expense for the past 5 years for Miller Hall show that, viewed separately, the facility has operated at a loss; and that depreciation on the building is not taken because the rules of the Community Chest prohibit doing so, and Miller Hall is included as a Community Chest activity.

The housemother of Miller Hall testified that she has an interview with a girl coming into Miller Hall, relating to her name and birth date, her parents' name, address, and telephone number, where she intends to work or attend school, and informs her that she is required to join the plaintiff association which costs $2 a year. The registration card which the girls give her when they come to Miller Hall is in evidence. She further testified that at the time of hearing the residents of Miller Hall were practically all girls from small towns within the State of Nebraska; that the age limitations are from 17 to 24 years; and that the income limitation is $250 a month. This witness tells the girls about

Miller Hall and its affiliation with the plaintiff, its purpose, and the moral and spiritual principles of the plaintiff. This witness further testified that the average age of girls who reside in Miller Hall would be between 18 and 19 years; that most of the girls are under 21 years of age; that many of them are students in business colleges or training schools; and that the rules and regulations of Miller Hall are put up in every girl's room. This witness further testified that she locks the door at night and remains up until all of the girls are in and taken care of; and that the longest period of time a girl may stay at Miller Hall is 3 years.

The membership application form states the purpose of the association as: "To build a fellowship of women and girls devoted to the task of realizing in our common life those ideals of personal and social living to which we are committed by our faith as Christians." The membership card contains the same statement.

The sole issue tried in the trial court was whether the plaintiffs' property is owned and used exclusively for educational, religious, or charitable purposes, and whether such property is owned or used for financial gain or profit to the owner or user.

Exemption of property from taxation is governed by Article VIII, section 2, of the Constitution of Nebraska, which provides in part: "The Legislature by general law may exempt * * * property owned and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user."

Section 77-202, R. R. S. 1943, implements this provision as follows, and provides in part: "The following property shall be exempt from taxes: * * * (c) Property owned and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user; * * *."

The contention of the defendants is that the property

of the plaintiff is used primarily for the purpose of furnishing low-rent housing, and is not used exclusively for charitable purposes within the meaning of the Constitution of the State of Nebraska, or the statutes as heretofore set forth, and therefore is not tax exempt.

In connection with this contention, the defendants rely on the cases of Doane College v. County of Saline, 173 Neb. 8, 112 N. W. 2d 248; County of Douglas v. OEA Senior Citizens, Inc., 172 Neb. 696, 111 N. W. 2d 719; and Iota Benefit Assn. v. County of Douglas, 165 Neb. 330, 85 N. W. 2d 726, 66 A. L. R. 2d 898. Both the plaintiff and the defendants rely on the case of Young Men's Christian Assn. v. Lancaster County, 106 Neb. 105, 182 N. W. 593, 34 A. L. R. 1060. We will refer to the foregoing cases, or as many of them as necessary, as they may relate to this appeal.

We believe the case of Young Men's Christian Assn. v. Lancaster County, *supra,* is applicable to the instant case. The building owned by the Young Men's Christian Association was placed on the tax rolls by the county assessor. Objections were filed on the ground that the property was used exclusively for religious, educational, and charitable purposes and therefore was exempt from taxation. The objections were overruled by the county board of equalization. On appeal to the district court, the objections were sustained and the property was held to be exempt from taxation. The building of the Young Men's Christian Association contained offices occupied for the association's purposes, a lobby, a cafeteria, meeting and assembly rooms, a gymnasium, bowling alleys, barbershop, and swimming pool. Part of the third floor and all of the fourth and fifth floors contained sleeping rooms. The members of the association and others who went to the building were given the benefit of religious influences by means of Bible classes and meetings of a religious character regularly held on Sunday and throughout the week. The educational work, under the supervision of an educational director,

consisted of both day and night schools, in which the common branches, languages, and technical subjects were taught, and also health clinics teaching the functions and care of the body. Several classrooms were used for this work. The department of physical exercise and improvement, in charge of a physical director, was an important feature in the program of the association, and essential relation of proper development of the physical requirements of young men to their mental and moral life was strongly emphasized. Music, games, and other recreations were provided, and the general plan pursued by the association sought to bring the entire routine of life of young men and boys into proper relation with their physical, mental, and spiritual needs. There were about 1,700 members, and the annual membership fee was $10. Revenues were made up of the membership fees, the income from the 117 rooms occupied by members, the cafeteria, barbership, and tailor shop, together with the small fees charged for games and for certain services for which members were required to pay. The total fell about $1,000 a month short of the amount necessary to pay the running expenses, and that deficit was made up by voluntary contributions of liberally disposed persons. With reference to the cafeteria, the tailor shop, and the barbershop maintained in the building, these were held to be business ventures carried on for profit, for accommodation of members and others who desired to patronize such facilities, and were too remotely connected with the general purposes of the association to be treated as uses for charitable purposes of the building or of the parts thereof occupied by them. The cafeteria was open to the public and was held to be taxable. The tailor and barber services were held to be necessary for the accommodation of the roomers in the building.

The defendants' contention is that the above-cited case is not in point as applied to the instant case for the reason that no girls are permitted to remain in

Miller Hall without paying rent; that each girl is permitted to stay there at the will of the plaintiff and her stay may be terminated for lack of cooperation or unacceptable behavior; that in the instant case the most nearly exclusive use of the premises is as a dormitory for girls and young women; that the extent of encouraging girls to use the facilities in the main building of the plaintiff across the street from Miller Hall is telling them that the doors are open in that building; and that the operation of Miller Hall does no more for its tenants than an ordinary well-run Christian home would do for a family.

This court in Young Men's Christian Assn. v. Lancaster County, *supra,* said: "Under facts with reference to the objects and activities of the Young Men's Christian Association there under consideration not differing essentially from the corresponding facts in the instant case, it was held in Little v. City of Newburyport, 210 Mass. 414, Ann. Cas. 1912D, 425, that the association, though not giving charity in its narrowest sense, was in its essence a benevolent or charitable institution, within the meaning of those words in the statute. * * * A similar organization devoted to the welfare of young women was held to be a purely public charity in Philadelphia v. Women's Christian Ass'n, 125 Pa. St. 572. * * *

"Not only in cases dealing with Young Men's Christian Associations, such as are hereinbefore cited, but in numerous cases dealing with tax exemptions claimed by other institutions in which some analogy is to be found, the courts have defined 'charity' to be something more than mere alms-giving or the relief of poverty and distress, and have given it a significance broad enough to include practical enterprises for the good of humanity operated at a moderate cost to those who receive the benefits. * * *

"Reason and authority are opposed to the proposition that an institution otherwise charitable will be deprived of that character by the mere fact that charges for

facilities and services are made to individual members, which not only do not result in profit, but which fail, in the aggregate, even to make the institution self-sustaining, and the appellant's contention to that effect must be denied.

"It follows from the foregoing discussion and review of the judicial opinions bearing upon that question that the appellee is to be regarded as a charitable organization, both in its professed purposes and by virtue of its actual performances in the practical work that it does for the general benefit of society in the elevation and betterment of young men and boys. The use to which it puts its building in carrying out its work must, therefore, be characterized, in its general aspect, as charitable, and the building in question is used for charitable purposes, except in so far as some part thereof may be used for purposes foreign to or inconsistent with its dominant purpose."

In the light of the evidence in the instant case and considering the above-cited case, it is clear that the plaintiff in the instant case owned and used its building exclusively for educational, religious, or charitable purposes. It was organized and operated to include such purposes. One of its means to accomplish its charitable purpose is through the operation of Miller Hall. Miller Hall is owned and used to furnish low-cost rental; it is owned and used as one of the means of accomplishing the charitable purpose of plaintiff, and is therefore used exclusively for a charitable purpose under the laws of this state. We believe that the case of Young Men's Christian Assn. v. Lancaster County, *supra*, as heretofore set forth, governs the instant case, and in the light of the holding of the cited case it is apparent that Miller Hall is exempt from taxation.

With reference to the case of County of Douglas v. OEA Senior Citizens, Inc., *supra*, wherein a building was built for the purpose of providing low-rent housing at its real cost, the court held that that was not a charitable

purpose. The court said in the opinion that whether or not a use of the property is charitable must in each instance be determined by its own facts. A reading of such case discloses that it in no way involves facts such as are in the instant case.

In the case of Doane College v. County of Saline, *supra,* the college was a nonprofit organization. It provided a house for its president, and by his contract he was required to live in the house. The house was used for meetings of various kinds directly connected with the work of the college. There was a library in the house used by the president so that he could do some of the work that was required of him relating to the college. It was held by this court that the use of the president's house was an exclusive use, and therefore the house was not taxable. The faculty rental units on the campus of the college were for rent to faculty members, but they were not required to live on the campus. It was held that these rental units were in competition with private homes in the city of Crete, and in fact were separate and distinct entities insofar as their relation to the college was concerned; and they were held to be taxable. This case in no way interferes with the instant case.

The question in the instant case is whether Miller Hall is used primarily for accomplishing the charitable purpose of the organization or is, instead, simply an adjunct, related to the organization but not an integral part of it insofar as carrying out its charitable purpose. It is apparent from the record that Miller Hall is not an adjunct. The testimony discloses that Miller Hall was established and is operated as a means of carrying out the purpose of the organization of the plaintiff, to provide moral surroundings, with religious overtones, and proper supervision, for a limited time for young girls coming to Lincoln to attend business or training schools.

Insofar as Iota Benefit Assn. v. County of Douglas,

*supra,* is concerned, it involved a medical fraternity, the purpose of which was held to be to support on a cost-sharing plan living quarters for members of the fraternity, which is not a charitable or educational purpose. The case has no applicability to the instant case.

The instant case does not depart from the principles laid down in the case of Young Men's Christian Assn. v. Lancaster County, *supra;* House of the Good Shepherd v. Board of Equalization, 113 Neb. 489, 203 N. W. 632; and the case of Doane College v. County of Saline, *supra.* While those cases present a different factual situation, the principles therein announced relate to the instant case. To hold Miller Hall exempt from taxation is in no way inconsistent with the principles of the holding in County of Douglas v. OEA Senior Citizens, Inc., *supra,* or any of the other decisions of this court involving exemption of property owned and used for educational, religious, or charitable purposes.

We conclude, for the reasons hereinbefore set forth, that the judgment of the trial court should be, and is hereby, affirmed.

AFFIRMED.