EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, APPELLEE, V. COUNTY OF GAGE, APPELLANT.

151 N. W. 2d 446

Filed June 9, 1967. No. 36484.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellant.

Baumfalk & Dalke and Hackler, Anderson, Chipman, Speer & Vader, for appellee.

Nelson, Harding, Acklie, Leonard & Tate et al., for amici curiae.

Oscar T. Doerr et al., amici curiae.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and NEWTON, JJ.

NEWTON, J.

The question presented here is the eligibility of property owned in Gage County by appellee Evangelical Lutheran Good Samaritan Society for exemption from taxation. The district court found that such property was exempt and an appeal was taken from that decision by Gage County, Nebraska, appellant herein.

The Evangelical Lutheran Good Samaritan Society is a nonprofit corporation organized and existing under the laws of the State of North Dakota, with its principal place of business at Arthur, North Dakota. The articles of incorporation state: "The purposes of this corporation shall be: (a) The ownership, operation and management of Christian Homes for the epileptic, senile, and other defectives; Nursing Homes; Homes for elderly people;

Hospitals; Homes for Senior Citizens; and Schools for Mentally Retarded. (b) To engage in other benevolent work of a charitable and religious nature and to participate, so far as circumstances may warrant, in any activity designed and carried on to promote the general health of the community."

The society owns and operates a very considerable number of institutions of the nature referred to in its articles of incorporation, located in several states in this general area. Two of these institutions are located in Gage County, one in the city of Wymore and one in the city of Beatrice. The Gage County institutions are the type generally denominated as "nursing homes." The Wymore institution has accommodations for 46 persons and the Beatrice institution, for 61. Any adult 21 or more years of age and in need of help or care is eligible for admission. Practically all of the residents are aged persons who require assistance for their mental and physical well-being, with apparently a few residents who are mentally subnormal. The residents in these institutions are supervised 24 hours a day to see that they do not wander away and to see that they receive necessary care according to their individual needs. Some of the residents are ambulatory; some are in wheelchairs; some are bedfast; and some are even incapable of feeding themselves without assistance. These people are housed, fed, and given any required medication; when necessary, they are assisted in standing, sitting, and moving about. They are also assisted in shaving, bathing, dressing, and in regard to their toilet needs, and when required, the services of doctors are obtained.

The residents of these institutions who are able to do so are required to pay for the services rendered; in other cases, families or relatives of the residents make such payments. In the case of indigent residents who do not have families who can or will contribute, payments are made by the county welfare department. Charges are based on the physical and mental condition of the

individual residents, the degree of care required, and the expense incurred in caring for such individual residents. Payments made by the county welfare department are made upon the basis of statewide rates recommended by the Department of Public Welfare. Some of the private residents are apparently charged somewhat more than actual cost, but others are accepted on a basis of less than cost, depending, apparently, on ability to pay. When a physician's services are required, additional charges are made to the individual resident for such expense. There is evidence in the record of charges made by two or three very small nursing homes located in the county which indicate that although run for profit, these private institutions are charging practically the same rates for their services as those received by the society; however, the evidence does not show the physical or mental condition of the residents of these private institutions.

The two Gage County institutions belonging to the society appear in some years to operate at a loss and in others to show a small profit after all actual operating expenses, with the exception of depreciation, are considered, including contributions made to the home office in Arthur, North Dakota, and to a business office maintained in Sioux Falls, South Dakota, to assist in the payment of the expenses incurred in maintaining those offices. All employees of the two institutions are paid, generally speaking, on a scale approaching that paid by other institutions in the area rendering similar services. Occasionally small donations of goods, services, or cash are received by these institutions. If one of them is unable to meet expenses, the home office is contacted and financial assistance obtained from one of the other institutions operated by the society which happens, at that time, to be in a better financial position. The Gage County institutions, if they happen to have surplus cash at any time, are sometimes called upon to contribute to the assistance of other institutions operated by the so-

ciety which are then unable to meet expenses. The overall picture presented is of a society maintaining a number of institutions of the nature authorized in its articles of incorporation on a nonprofit basis, with each individual unit being available to assist on a financial basis, when necessary, in the operation of the other units.

Regarding religious services, morning and evening devotions are held, grace is said before meals, and thanks, after meals. There are a weekly bible class and weekly church service under the auspices of local pastors of various denominations. Attendance at religious services is on a voluntary basis.

Article VIII, section 2, Constitution of Nebraska, and section 77-202, R. R. S. 1943, exempt from taxation property owned and used exclusively for religious or charitable purposes when it is not owned or used for financial gain or profit. It is contended that the real estate and personal property owned by the society used for the purposes above mentioned and located in Gage County, Nebraska, are exempt under these constitutional and statutory provisions. "The primary or dominant use, and not an incidental use, is controlling in determining whether property is exempt from taxation." Lincoln Woman's Club v. City of Lincoln, 178 Neb. 357, 133 N. W. 2d 455. See, also, Nebraska Conf. Assn. Seventh Day Adventists v. Board of Equalization, 179 Neb. 326, 138 N. W. 2d 455. In the present case, the primary or dominant use is not one for religious purposes and the property cannot be exempt from taxation on that ground.

This narrows the problem down to the question of whether or not the institutions in question are charitable institutions. These institutions, generally referred to as nursing homes, are in a large measure analogous to hospitals. Hospitals are employed in the treatment of individuals of all ages who become ill and also supply facilities for surgery. Nursing homes do not have surgical facilities and do not provide care for the young, their services being limited to a large extent to the

aged, the infirm, and to individuals who are mentally subnormal, but they provide the same care that hospitals furnish to patients convalescing from surgery or being treated for illnesses not requiring surgery. Formerly all institutions furnishing services of this nature, including both hospitals and nursing homes, were providing care for many patients without compensation and extended charity in the sense of alms-giving or free services to the poor. With the advent of present day social security and welfare programs, this type of charity is not often found because assistance is available to the poor under these programs. Yet, "* * * the courts have defined 'charity' to be something more than mere alms-giving or the relief of poverty and distress, and have given it a significance broad enough to include practical enterprises for the good of humanity operated at a moderate cost to those who receive the benefits." Young Men's Christian Assn. v. Lancaster County, 106 Neb. 105, 182 N. W. 593, 34 A. L. R. 1060. See, also, Young Women's Christian Assn. v. City of Lincoln, 177 Neb. 136, 128 N. W. 2d 600; Lincoln Woman's Club v. City of Lincoln, 178 Neb. 357, 133 N. W. 2d 455.

Hospitals operated as nonprofit institutions are universally classed as charitable institutions. 15 Am. Jur. 2d, Charities, § 79, p. 85, § 148, p. 156; 14 C. J. S., Charities, § 2e, p. 422, § 16, p. 448; 84 C. J. S., Taxation, § 297d, p. 617; St. Elizabeth Hospital v. Lancaster County, 109 Neb. 104, 189 N. W. 981; Muller v. Nebraska Methodist Hospital, 160 Neb. 279, 70 N. W. 2d 86.

As heretofore noted, nursing homes for the aged and infirm are analogous to hospitals in that they perform largely the same services available in hospitals although the services available do not cover such a wide area and are more limited as to the types of cases and persons served. They are, however, recognized as charitable institutions when not operated for private gain. Rohlff v. German Old People's Home, 143 Neb. 636, 10 N. W. 2d 686.

" 'The fact that patients who are able to pay are required to do so does not deprive a corporation of its eleemosynary character, * * *.' " Muller v. Nebraska Methodist Hospital, *supra;* Duncan v. Nebraska Sanitarium & Benevolent Assn., 92 Neb. 162, 137 N. W. 1120, 41 L. R. A. N. S. 973, Ann. Cas. 1913E 1127; St. Elizabeth Hospital v. Lancaster County, *supra;* 84 C. J. S., Taxation, § 282 (b), p. 545; 15 Am. Jur. 2d, Charities, § 148, p. 156.

In view of the foregoing, it appears that the property of appellee is owned and used for a charitable purpose within the meaning of the Constitution and statutes of Nebraska and in conformity therewith is exempt from taxation. The judgment of the district court should be and is affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I respectfully dissent from the majority opinion herein. I appreciate that the issue involved is a close one, but suggest that the majority opinion goes further than we have in the past and opens the avenues of tax exemption that were never intended. If this opinion stands, every nursing home in the state, by incorporating as a nonprofit corporation, can avoid taxation and still drain off all profit in salaries and expenses.

We should not lose sight of the fact that in interpreting and applying constitutional and statutory provisions relating to exemption from taxation, the rule of strict construction applies and the burden is on the taxpayer to show that the property involved is clearly within the claimed exemption.

The constitutional provision involved herein, Article VIII, section 2, provides in part as follows: "The Legislature by general law may exempt * * * property owned and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user."

It is to be noted that the Legislature may only provide exemption if the property is owned and used "exclusively" for educational, religious, charitable, or cemetery purposes. The word "exclusively" is one of general understanding.

In Todd v. County of Box Butte, 169 Neb. 311, 99 N. W. 2d 245, this court said: "Statutes exempting property from taxation are to be strictly construed, and one contending that his property is exempt from such tax must show clearly that he is within the exceptions provided by statute."

As the majority opinion emphasizes, the primary or dominant use and not an incidental use is controlling to exempt property from taxation. The majority opinion determines that the primary or dominant use herein is not for religious purposes, but does determine it to be charitable. I have no quarrel with the definition of charity therein, but suggest that the intent of the law is not to exempt every nonprofit corporation which may be of some benefit to mankind. It is difficult to see how this case can be distinguished from County of Douglas v. OEA Senior Citizens, Inc., 172 Neb. 696, 111 N. W. 2d 719, in which we denied tax exemption. The corporation involved in that case was a nonprofit corporation, not operating for gain or profit, which had built a housing facility for elderly people, mostly retired teachers.

There can be no doubt that in the instant case, as well as in the OEA case, some of the use and purpose of the organization was charitable, and that all of it is highly worthy and commendable, but it does not necessarily follow that it can be determined that the use may be denominated "exclusively" charitable. In the instant case, all persons entering the homes pay, and most of the private residents are charged somewhat more than the actual cost, while in the OEA case the evidence indicated that the charges to residents were no more than the actual costs involved.

In the instant case, the society makes no contribution

and indigent residents who do not have families who can or will contribute are supported in the home by the county welfare department. In the OEA case, if an occupant became unable to pay in whole or in part, the occupant was permitted to remain, and the deficiency was made up by the Omaha Education Association or by contributions from other sources.

In the instant case, the personnel operating the home are paid at least the going rate in the community for the type of service rendered, and it must be assumed that the same situation was true in the OEA case.

In the instant case, the charges are the same as those made by nursing homes in the vicinity which operate for profit. Tax exemption would make these institutions more competitive than the private operators with whom they compete, and could eliminate those operators. In the OEA case, the charges were set at actual expense, so far as it was possible to do so, and the clientele to be served was limited.

It is to be noted that in the instant case, the institutions expect to and do operate at a profit and are able to forward funds to help other institutions maintained by the Evangelical Lutheran Good Samaritan Society who may need help. In addition, the homes operating in Gage County pay the parent corporation for services furnished to them, including certain bookkeeping services handled from a central office outside Nebraska.

Finally, while these homes are operated by a North Dakota corporation, they are locally built and maintained. The society contributes nothing to their construction, operation, or maintenance. These institutions are primarily homes for the elderly, and any charitable use is incidental. If they are to be tax exempt, every home for the elderly operated by a nonprofit corporation, including the OEA home, is likewise tax exempt.